EDWIN L. SANBORN *vs.* WILLIAM RICE.

Suffolk.    March 11. — April 6, 1880.    ENDICOTT & SOULE, JJ., absent.

SAME *vs.* SAME.

Suffolk.    March 16. — Sept. 11, 1880.    AMES & LORD, JJ., absent.

The owner of a large tract of land divided it into lots, shown on a plan, and conveyed one lot, rectangular in shape, bounding it beginning at a certain distance from the westerly corner of a fence around a distant lot, and thence by a line running around the lot conveyed, the courses and distances of which were given. The deed also contained a condition that the front line of the house should be a certain distance from the street on which it bounded; a condition that the house should occupy the entire width of the lot; and a recital that the house then on the lot was in compliance with these conditions. An adjoining lot was conveyed to the same person by a deed containing a similar description, and similar conditions and recitals. The grantee then conveyed the first lot, using the same description as in the deed to him. *Held,* that his grantee had title to the centre of the partition wall between the two estates, even though the effect of measuring from the fence of the distant lot would be to place the whole of the partition wall in the second lot.

A lot of land twenty-one feet wide was conveyed subject to the condition that the front line of the building should be fifteen feet from the street on which the land bounded, and the deed recited that the building then on the land conformed to the condition. The front line of the building thus referred to was straight. Subsequently the owner built a rectangular addition to the front, eight or nine feet wide and projecting three feet and three inches towards the street. This structure began four feet above the ground and extended to the top of the building. *Held,* that there was a violation of the condition.

A deed of a lot of land, bounded on a street, contained a condition that "no dwelling-house or other building shall be erected on the rear of said lot." The deed also stated that the building then on the land conformed to the condition. *Held,* that there was no ambiguity as to what was meant by the rear of the lot, although the same condition had been inserted in an agreement for a deed made when the land was vacant.

THE FIRST CASE was an action of tort for breaking and entering the plaintiff's close in Boston. Writ dated May 28, 1878. Trial in the Superior Court, before *Colburn,* J., who reported the case for the determination of this court, in substance as follows:

The plaintiff and the defendant are owners of adjoining estates on Rutland Street, on each of which is a brick house covering the entire width of the lot, with a partition wall between them eight inches thick. The plaintiff contended that the division line between the two estates was the centre of this partition

wall. The trespass complained of was a wall built by the defendant, in January 1878, on this partition wall, which covered the entire space of eight inches in front, and ran at an acute angle towards the rear, and there extended a little beyond the centre line.

The city of Boston, before 1858, owned a tract of land on the northeasterly side of Rutland Street, and divided it up into eighteen lots, which were shown on a plan, and numbered from 1 to 18. On January 1, 1858, the city conveyed the lot now occupied by the plaintiff to William E. Blanchard, by deed as follows : " Beginning at the southerly corner of the said land, being a point in the northeasterly line of Rutland Street, distant two hundred and thirty feet northwestwardly from the westerly corner of the brick fence of the primary school-house lot, thence running northwestwardly, bounded by Rutland Street, twenty-one feet; thence northeastwardly, parallel to Newland Street, ninety feet; thence southeastwardly, bounded by a passageway twenty feet wide running parallel to Rutland Street, twenty-one feet; and thence southwestwardly, parallel to Newland Street, ninety feet, to the point of beginning; containing eighteen hundred and ninety square feet, more or less. Being lot numbered 12 on a plan recorded with plans of city lands sold, book 2, leaf 79, in the office of the superintendent of public lands. It is understood that this conveyance is given and accepted in full performance of a certain agreement, dated May 1, 1857, given by the said city of Boston to the said William E. Blanchard. And this conveyance is also subject to the following conditions : 1. All taxes and assessments which have been laid or assessed upon the said premises previous to the execution of this conveyance shall be paid by the said William E. Blanchard, his heirs and assigns. 2. The front line of the building which may be erected on the said lot shall be placed on a line parallel with and fifteen feet back from the said Rutland Street. 3. The building which may be erected on the said lot shall be of a width equal to the width of the front of the said lot. 4. No dwelling-house or other building except the necessary outbuildings shall be erected or placed on the rear of the said lot. 5. No building which may be erected on the said lot shall be less than three stories in height exclusive of the basement and attic,

ıor have exterior walls of any other material than brick, stone
ır iron, nor be used or occupied for any other purpose or in any
ıther way than as a dwelling-house during the term of twenty
years from October 1, 1857. It is understood that the building
at present erected upon the said lot is constructed in conformity
with the above conditions, and is satisfactory to the said city of
Boston."

In June 1858, Blanchard conveyed this lot of land "with the
new brick dwelling-house thereon standing" to Richard C. Cabot,
through whom by mesne conveyances it came to the plaintiff in
1873. All of these deeds used the same language, in describing
the boundaries of the land, as the deed to Blanchard, and con-
veyed the land subject to the conditions contained in that deed,
but did not more specifically set them forth.

The defendant derived title to his lot through a deed from the
city of Boston to William E. Blanchard, dated May 14, 1858,
which bounded and described it as follows : " Beginning at the
southerly corner of the said land, being a point in the north-
easterly line of Rutland Street, distant two hundred and fifty
one feet northwestwardly from the westerly corner of the brick
fence at the primary school-house lot ; thence running north-
westwardly, bounded by Rutland Street, twenty-one feet ; thence
northeasterly, parallel to Newland Street, ninety feet ; thence
southeastwardly, bounded by a passageway twenty feet wide,
running parallel to Rutland Street, twenty-one feet ; and thence
southwestwardly, parallel to Newland Street, ninety feet, to the
point of beginning ; containing eighteen hundred and ninety
square feet, more or less. Being lot numbered 13 on a plan re-
corded with the plans of city lands sold, lib. 2, fol. 79, in the
office of the superintendent of public lands." The deed also
stated that the conveyance was given and accepted in full per-
formance of an agreement, dated May 1, 1857, of the city of
Boston with Blanchard ; and that the conveyance was also sub-
ject to certain conditions, which were set forth at length, and
were the same as in the preceding deed to Blanchard, and con-
tained the same recitals.

On September 28, 1858, Blanchard conveyed lot 13 to Owen
Bearse, by deed which described the two side lines as running
" to and through the centre of the brick partition wall" ; and

the description was the same in the subsequent deeds through which the defendant claimed title.

The plaintiff put in evidence the plan of the land referred to in the deeds of the plaintiff and of the defendant. The house of the plaintiff was occupied by him from September 10, 1873; and he was in occupancy of the same at the time when the acts complained of were done. The house, as constructed and existing at this time, occupied the ground to the centre of the partition wall, and was numbered 67, and the defendant's house, as constructed and existing at the same time, occupied the land to the same centre line, and was numbered 69; each of them as thus located measuring twenty-one feet as the width of the houses respectively, including one half of the partition wall.

A surveyor called by the plaintiff testified that all of the lots shown on the plan are now covered with brick houses, contained in one block of the width indicated by the plan, the plan being made upon a scale shown thereon; that the house 67 stood on lot 12, as shown by said plan; that to fix the line between lots 12 and 13, he commenced at the line of Shawmut Avenue, as given to him by the city surveyor, and measured off five hundred and thirty-one feet and six inches, and this brought the centre of the wall of the houses on lots 12 and 13 into lot 12. On cross-examination, he stated that two hundred and fifty-one feet from the southwest corner of the school-house fence falls short of the side of the wall, between lots 12 and 13, by one and three fourths inches; that the school-house fence is six and three fourths inches inside of the school-house lot, as shown on the city plan; that from the brick fence of the school-house lot to the nearest house on the northwesterly side is three feet eleven and one half inches; that there was nothing on the ground to show the line of the school-house lot except the brick fence; that he could not locate the plaintiff's lot satisfactorily by the city plan; that he located it by information from other sources; that he did not know of the brick wall of the school-house lot ever being changed in location, since it was first named or referred to in any of the deeds in evidence; but it did not appear that he was acquainted with the premises until quite recently, when this controversy arose, and there was no other evidence as to where it stood at the time referred to in said deeds, except so far as this may

appear from the deeds and plan. It did not appear that the defendant had occupied the one half of said partition wall next to the plaintiff's house before the acts complained of, or that his house or the timbers of the same entered it or rested upon it at all.

The defendant contended, among other things, that, even if the plaintiff owned one half of the partition wall and the land on which it stood, he had a right to raise the partition wall in order to put another story upon his own part; that the plaintiff had only an easement in the partition wall at most, if any title whatever.

The plaintiff contended that there was evidence for the jury, under proper instructions from the court, tending to show that he was the owner of one half of the partition wall and the land covered by it; that, if not the owner in fee, he was in actual possession of the same, claiming title, when the defendant entered upon it and did the acts complained of; and that the defendant, by his deeds, had no title whatever to the land in dispute, and that he was a stranger; that, if he had any right to raise the partition wall for the purpose claimed, he had not done it either on his half exclusively, nor on the whole, so as to be of any use to the plaintiff.

At the request of the defendant the judge ruled, as matter of law, that the plaintiff could not recover, and directed a verdict for the defendant. If the ruling was correct, judgment was to be entered on the verdict; otherwise, the verdict to be set aside, and a new trial granted.

*A. A. Ranney*, for the plaintiff.

*R. Stone, Jr.*, for the defendant, contended that the plaintiff had not shown any title by deed to the land in question; that, if the title was not in the defendant, it was in Blanchard; and that the mere occupation by the plaintiff would not entitle him to maintain the action.

LORD, J. The plaintiff's right to recover in this action depends upon his ownership in severalty of half the division wall between his house and that of the defendant; but the precise question arising upon this report is whether there was evidence to submit to the jury tending to prove such ownership, and we have no doubt that there was such evidence.

There is, perhaps, no rule of construction more familiar than the rule that, in an instrument of conveyance of land, if there be any discrepancy between distances and monuments mentioned in the deed, the monument must be regarded as controlling, and the distance must yield. This rule is so well settled, and is founded upon such sufficient reason, that no discussion of it is necessary. We apprehend that the error at the trial arose by reason of a supposed application of this rule. It would seem to have been assumed at the trial that the only monument referred to in the deed was the "brick fence of the primary school-house;" and that in order to ascertain the plaintiff's land it was necessary to begin at a point at a certain number of feet from the corner of the brick fence referred to. The other monuments, such as Rutland Street and the ways referred to, are in any view of the case entirely immaterial, except as they indicate the general locality of the lot.

Upon looking into the deeds, however, we are entirely clear that there are other and important monuments which must be conclusive evidence of the rights of the respective parties. The city of Boston was the owner of these two lots and sixteen others bordering upon Rutland Street. It was a single tract of land, but divided by the city into lots numbering 1 to 18 inclusive, which lots covered the entire territory. The two lots now in the occupation of these parties respectively were bought of the city by William E. Blanchard. Blanchard entered upon the lots under an agreement of the city to convey them to him before he received a deed. The deed under which the plaintiff claims bears date January 1, 1858, and recites that it is given and accepted in full performance of a certain agreement dated May 1, 1857; and is expressed to be made subject to certain conditions. One of those conditions is, "The building which may be erected on the said lot shall be of a width equal to the width of the front of the said lot." Another of the conditions is, "No building which may be erected on the said lot shall be less than three stories in height exclusive of the basement and attic, nor have exterior walls of any other material than brick, stone or iron, nor be used or occupied for any other purpose or in any other way than as a dwelling-house during the term of twenty years from October 1, 1857."

Such a building, when erected, would seem to be a substantial monument; and the deed goes on to recite that "the building at present erected upon the said lot is in conformity with the above conditions, and is satisfactory to the said city of Boston." This was the first conveyance by the city of Boston of either of the two lots; and the question is, What lot of land did that deed convey? For if that can be made certain, the deed being first in time will be first in right.

There can be no valid construction of that deed except such as gives to Blanchard a lot of land twenty-one feet in width, the front line of which upon Rutland Street is covered through its entire length with such a building as is described. We say, the front line of which upon Rutland Street; the building, by another condition in the deed, was to be set back fifteen feet from Rutland Street and on a line parallel with it; but inasmuch as the lots are all rectangular, the open space of fifteen feet in front of the building cannot in any manner be of value in determining the construction of the deed, and the lot which is to be sought for in locating that deed is a lot upon which a building is erected, the front line of which is coincident with the width of the lot. Without regard to subsequent conveyances, the lot and building, as the building stood when this conveyance was made, passed to Blanchard from the city of Boston. This lot, through divers mesne conveyances, has come to the plaintiff, and was numbered 12 upon the original plan of the city of Boston. The defendant's lot was an adjoining lot, and numbered 13 upon the same plan. The title to that lot comes also through Blanchard from the city of Boston, and it was conveyed to Blanchard on May 14, 1858, and at the time when Blanchard received the title he was the owner of the plaintiff's lot, or lot 12. The deed which he received from the city contained the same recitals and the same conditions with the previous deed, and it contained also the statement that the building then erected upon it was in conformity with the conditions. We have, then, Blanchard the common owner of two adjoining estates, each with a dwelling-house upon it covering the entire front land of its respective lot. Under such circumstances the conveyance of the house and lot, or the lot and house thereon, without any more particular description, would

convey these lots respectively as they were received from the city of Boston; and when the general purpose of a deed was to convey either of the houses specifically, it would require very cogent language to induce us to hold the dividing line between the two estates to be different from or other than that which was established by the building of the houses, the giving and accepting of the deeds, the practical establishment of the line by all parties in interest. Upon looking at the deeds, however, we find nothing to indicate any purpose of Blanchard, or of any grantee in either line of title, to change the original limits of the respective lots; but, on the other hand, all the conveyances have carefully preserved the original descriptions of the estates; and the respective occupations must be deemed to have been in accordance with the respective titles. Although, when Blanchard made his first conveyance of lot 12, he did not speak specifically of any monument except the brick fence and lot 12, yet lot 12 had then become as permanently fixed as a monument as the house itself; and if the distance between the brick fence and lot 12 is erroneously stated in the deed, such distance must be rejected. But when Blanchard conveys subsequently the lot now occupied by the defendant to Bearse, he carefully describes the line between these two respective estates as running "to and through the centre of the brick partition wall;" and such description has been followed in every conveyance, to and including that to the defendant. It is therefore clear that the defendant has no title to that part of the wall which the plaintiff claims that he has interfered with.

It is said, however, that it is immaterial whether the defendant has title or not, because the plaintiff must prevail upon the strength of his own title, and not by reason of the weakness of the defendant's. If this doctrine were applicable to actions of trespass in which the boundary lines of adjoining estates are involved, the answer is obvious. The plaintiff shows a deed of a dwelling-house which, if not conclusively establishing his right to the centre of the division wall, *prima facie* establishes his entire right to the whole building to the centre of the partition wall, and the occupancy of the building is presumed in law to be co-extensive with the title; and if the defendant shows that he has exercised any acts of ownership over that portion of the estate,

*prima facie* those acts are trespasses, which he cannot justify without showing title, and when he produces his title it excludes the locus from his estate. Although this answer is conclusive, we do not mean that it shall be inferred that the rules of evidence are the same in an action of trespass which depends upon the boundary line between two contiguous estates, and in a writ of entry brought to recover a tract of land averred to be in the possession and occupation of the tenant, of which possession the demandant seeks to deprive him. That question, however, we need not discuss. It is sufficient for us to say that there was evidence which, if not conclusive, was certainly competent for the jury to consider in determining whether the plaintiff had established his right in severalty to that half of the division wall which adjoined his house.

*Verdict set aside, and new trial granted.*

THE SECOND CASE was a bill in equity to enforce the following restrictions contained in a deed from the city of Boston to William E. Blanchard, the defendant's grantor : " 2. The front line of the building which may be erected on the said lot shall be placed on a line parallel with and fifteen feet back from the said Rutland Street." " 4. No dwelling-house or other building, except the necessary outbuildings, shall be erected or placed on the rear of said lot." At the hearing before *Soule,* J., the following facts appeared :

In 1857, the city of Boston, then the owner of vacant land on Rutland Street, made an agreement with William E. Blanchard to sell to him thirteen lots of land on that street, numbered from 5 to 18 on a plan. The agreement contained the conditions above set forth. Blanchard built a block of houses, and the city conveyed the lots to him by separate deeds, each setting forth the above conditions, and reciting that the building erected on the land conveyed "is in conformity to the foregoing conditions."

The plaintiff subsequently became the owner of lot 12, and the defendant the owner of lot 13. The plaintiff's house as originally built, and at the time of the filing of the bill, was four stories high, and of the same depth as the defendant's house was before the alterations hereinafter mentioned, but had an

extension in the rear one story high above the basement, and ten feet deep, and covering the entire width of the lot.

In March 1878, the defendant altered and enlarged the dwelling-house on his lot by erecting an L in the rear about seventeen feet wide, of a height equal to the height of the house, and extending from the rear wall thereof to within one and one half inches of the rear boundary line of the lot, and leaving a space next to the plaintiff's line about four feet wide, and also by building a rectangular addition to or projection from the front, eight or nine feet wide, projecting three feet and three inches toward the street, and extending from the level of the main floor, about four feet from the ground, to the cornice at the top of the building. This addition was of iron frame, and in it were set windows for the several stories of the house. The timbers supporting this addition were locked into the timbers of the several floors, and the addition had no other support. The front line of the building, at the date of the deed from the city of Boston to Blanchard, and until the alteration was made, was straight, and parallel with the line of Rutland Street, and distant fifteen feet therefrom. The window caps and sills and the eaves projected slightly beyond the brickwork. The steps led up from the open space in the front of the house. Over the front door there was a window in each story, and there were windows in the basement. At the time the defendant was making these alterations, the plaintiff objected thereto, and requested him to conform to the conditions in the deed from the city to Blanchard.

Upon these facts, the judge was of opinion that the plaintiff was entitled to relief in respect to the additions on the front of the defendant's house, but not as to the additions in the rear; and reported the case for the determination of the full court.

*Ranney*, for the plaintiff.

*Stone*, for the defendant.

SOULE, J. It often happens that owners of land, which they design to put into market in lots for dwelling-houses, insert in the deeds of the several lots a uniform set of restrictions as to the purposes for which the land may be used, and as to the portions of it which may be covered by buildings. So far as these restrictions are reasonable in their character, they are upheld and enforced by courts of equity in favor of the original

owner, so long as he continues to own any part of the tract for the benefit of which the restrictions were created, as well as in favor of the owner of any one of the lots into which the tract was divided, and against the owner of any of the lots who attempts to set the restrictions at naught. *Whitney* v. *Union Railway*, 11 Gray, 359. *Parker* v. *Nightingale*, 6 Allen, 341. *Linzee* v. *Mixer*, 101 Mass. 512. *Western* v. *Macdermott*, L. R. 2 Ch. 72.

The defendant admits that this is the law, but contends that what he has done is not in violation of the restrictions in his deed. We are of opinion, however, that his position cannot be maintained. The deed provides that the front line of the building which may be erected on the lot shall be placed on a line parallel with, and fifteen feet back from, Rutland Street. The front wall of the defendant's house leaves the ground on a line precisely fifteen feet from the street, but from a point about four feet above the ground he has constructed an addition to his house, about eight or nine feet wide, in a line parallel with the street, and projecting three feet and three inches toward the street, and extending to the cornice at the top of the house. This addition starts from a level with the top of the steps which lead to the front door, and from that point extends to the top of the building. It is rectangular, and extends over nearly one half of the width of the lot on which the house stands. We cannot regard this addition as an ordinary projection, or variation of detail in the arrangement and ornamentation of the front of the house, which the parties to the deed from the city may have contemplated as being proper under the provisions of the deed. The addition is in substance and effect a removal of the front line of the house three feet and three inches nearer to the street than the deed permits. The effect on the adjoining estates is substantially the same as if the addition were supported by a wall rising from the ground perpendicularly to its front line, instead of being supported as it now is. The plaintiff is therefore entitled to relief on account of this violation of his rights.

The erection and maintenance of the addition to the back part of the house are equally without right. Whatever uncertainty might exist as to the meaning of the restriction in the deed which provides that "no dwelling-house or other building, except

the necessary outbuildings, shall be erected or placed on the rear of said lot," if there had been no house on the land when the deed was delivered, and if the words stood alone and unexplained, we are of opinion that, inasmuch as the grantee accepted his deed of the defendant's lot from the city while a house was standing on the land, the front of which was fifteen feet back from the street, and which covered the whole width of the lot, and which was stated in the deed to be "in conformity to the foregoing conditions," all that part of the lot described in the deed which lay behind the house is to be regarded as "the rear of said lot," within the meaning of the condition under consideration. *Keening* v. *Ayling*, 126 Mass. 404.

The result is that the plaintiff is entitled to a decree for the removal of the structures which have been erected in violation of his rights.                    *Decree accordingly.*