NATHANIEL P. HAMLEN & another, trustees, *vs.* BENJAMIN
F. KEITH.

Suffolk.    March 22, 1898. — May 18, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Equity — Deed — Condition — Implication — Parol Contract — Dedication —
Prescription.*

At the trial of a bill in equity, filed May 8, 1897, to enjoin the defendant from build-
ing out upon his land beyond the former front of his building on T. Street in
Boston about four feet beyond the old line, which was also the line of the other
buildings between W. and M. Streets which intersect T. Street, one to the
north and the other to the south of the place in question, it appeared that the
plaintiff owned the building adjoining the defendant on the M. Street side ; that
on May 25, 1795, the town voted to sell all or any part of land opposite the Com-
mon on what are now T. Street and P. Street, and including the land between
W. and M. Streets, " upon express condition that all buildings to be erected on
the lands sold by virtue of this vote shall be regular and uniform, and of brick
or stone, and covered with slate or tile, or some materials that will resist fire " ;
that on January 12, 1796, four large lots, including one called lot five, of which
the defendant's land is a part, and one called lot six, of which the plaintiff's
land is a part, were conveyed under this vote to a person in one deed, in which
the condition was repeated in the above words ; that the present parties derived
their titles through mesne conveyances from this deed ; that by 1810, or a little
later, there was a continuous line of buildings from W. Street to M. Street, upon
a straight line at a slight angle to T. Street, but at an average distance from it
of about four feet ; and that in and after July, 1877, the house on the defendant's
land was altered from a dwelling-house to a shop, the four feet in question being
taken into the basement story and covered, at a level with the adjoining side-
walk, with Hyatt lights, made of iron and glass, and adapted at once to light the
basement and to serve as a pavement for travel.    *Held*, that the plaintiff was
not entitled to an injunction ; that there was no dedication of the four feet as a
footway, and that there was no way by prescription.

BILL IN EQUITY, by the owners of the buildings 164 and 169
Tremont Street, Boston, to enjoin the defendant, as owner of
163 Tremont Street, from building out the front of his building
over the space about four feet wide between the front wall of
his building and the line of the sidewalk, and in front of the
line of the front walls of the plaintiffs' building and other build-
ings in the block, on the ground of a condition in a vote and
deed of the town of Boston in 1795 and 1796, and of a public
right of way, by dedication or prescription, over said space.

West Street and Mason Street intersect Tremont Street, one to the north and the other to the south of the place in question.

Hearing before *Allen*, J.; who ordered the bill dismissed, with costs, and, at the request of the plaintiffs and with the consent of the defendant, reported the case for the consideration of the full court. The facts appear in the opinion.

*H. W. Putnam*, for the plaintiffs.

*W. E. Jewell*, for the defendant.

HOLMES, J. This is a bill in equity, brought to enjoin the defendant from building out upon his land beyond the former front of his building on Tremont Street in Boston. To suit the defendant's convenience no preliminary injunction was asked, it being agreed that the defendant would proceed at his peril, and the building now has been erected. It projects about four feet beyond the old line, which is also the line of the other buildings between West and Mason Streets. The plaintiffs own the building adjoining the defendant on the Mason Street side, and rely upon a condition in a vote and deed of the town of Boston, and also upon the existence of a public way by dedication or prescription.

On May 25, 1795, the town voted to sell all or any parts of a large amount of land opposite the Common on what are now Tremont Street and Park Street, and including the land between West and Mason Street, " upon express condition that all buildings to be erected on the lands sold by virtue of this vote shall be regular and uniform, and of brick or stone, and covered with slate or tile, or some materials that will resist fire." On January 12, 1796, four large lots, including one called lot five, of which the defendant's land is a part, and one called lot six, of which the plaintiffs' land is a part, were conveyed under this vote to one Henry Jackson by one deed, in which the condition was repeated in the above words. The present parties derive their titles through mesne conveyances from this deed, and this is the restriction upon which the plaintiffs rely. By 1810, or a little later, there was a continuous line of buildings from West Street to Mason Street, upon a straight line at a slight angle to Tremont Street, but at an average distance from it of about four feet.

We are of opinion that the plaintiffs have no right to an injunction under the foregoing deed. It is true that the absence of

equity jurisdiction at the time when an instrument is made is not conclusive against the granting of equitable remedies at a later time, (*Rogers* v. *Ward*, 8 Allen, 387, 390,) but the state of the law at the date of the deed may be taken into consideration, and cautiously used in determining the meaning and operation of its. words. *Crocker* v. *Cotting*, 166 Mass. 183, 187. *Staigg* v. *Atkinson*, 144 Mass. 564, 569. At the time when the city of Boston conveyed to Jackson, no one, it is safe to say, dreamed that the words quoted could operate except as a condition, or be enforced by any one except the town of Boston. No one dreamed that they gave rights to any one except the town. If nevertheless equity subsequently should treat such ancient restrictions as standing on the same footing as later ones with regard to enforcement, at least it would be bound in the matter of construction to interpret the words as they would have been interpreted when written. We must take the words as if their only effect was to create a condition when we are finding out their meaning, even if we should persuade ourselves that they had a latent operation by way of trust in favor of the several landowners affected, irrespective of any one's intent or knowledge at the time.

Taking the words as a condition which meant forfeiture for breach, we naturally are not disposed to take them as meaning any more than they say in terms, and we should give the grantees the benefit in case of doubt. We do not read the condition as intended to bind the land for all time to a building line inside the boundaries of the conveyance. It says nothing about such a line; if one were mentioned the case would be very different. The words " regular and uniform " cannot be taken to refer to the line of fronts without something of a strain, for if they do refer to it, they provide no standard of regularity and uniformity, so that it would seem that the first builder would set the rule for the rest. The vote deals with a large amount of land not all alike in circumstances, and the condition in terms refers to buildings, not to land. We are of opinion that the words are given sufficient force if they are confined at most, so far as the present question is concerned, to the original construction of the buildings first erected, — those which it was expected would be erected and which were erected in fact soon after the town had made its sales. It seems to us that it would be going too

far to interpret the words as binding the owner of every lot into which the land might be cut up to adhere for all time, and under whatever change of conditions and circumstances, to a building line other than that of the conveyances, determined by the accident of what the first builder chose to do.

But, further, we have not been able to persuade ourselves that the condition confers any rights upon the plaintiffs, whatever its construction. The general difficulty which we have stated is made insuperable to our minds by the specific purposes shown on the face of the condition itself. The town evidently was considering only appearance and safety from fire, and both only in the public interest. We do not think that the plaintiffs can claim under it, as granted by implication, rights which it is practically certain never were intended to be conferred. The repetition of the condition in the later deeds did not purport to enlarge the obligations or rights originally created, whatever those obligations or rights might turn out to be.

It is argued that the uniformity of the line of buildings warrants the finding of a parol contract which may be enforced. The judge who tried the case found the other way. The condition in the deeds sufficiently explains how the line of fronts came to be uniform, and it would be extravagant to say that uniformity between adjoining houses unexplained and by itself warrants a finding that it was due to an agreement binding the land that the line of building should be the same forevermore.

Between July 16 and October 22, 1877, the house on the defendant's land was altered from a dwelling-house to a shop. The four feet in question were taken into the basement story, and were covered, at a level with the adjoining sidewalk, with Hyatt lights, made of iron and glass, and adapted at once to light the basement and to serve as a pavement for travel. For some years, it may be assumed, the public walked over the space more or less. It is argued that this was a dedication of the four feet as a footway. We rather should have supposed it imported a license than anything more. But if a dedication was attempted, it cannot be taken to have been a dedication otherwise than as a part of the street of which it formed a part to the eye, — in other words, as a highway, not as a footway. The only reason why it even was argued to have been otherwise is because dedi-

cation of land for a highway without the consent of the town then was and still is impossible. Gen. Sts. c. 43, § 82. Pub. Sts. c. 49, § 94.

It also is argued that there is a way by prescription. It clearly appears that there was no such way when the bill was filed. It would seem that there had been no continuous adverse use for nearly the necessary time when the bill was filed. If there had been such continuous use it probably was interrupted, and certainly does not appear not to have been, by the erection of the defendant's new building. Finally, if there had been a public way of any kind, either by dedication or by prescription, it is at least doubtful whether that fact would have furnished a ground for the plaintiffs' bill. *Harvard College* v. *Stearns,* 15 Gray, 1. *Stanwood* v. *Malden,* 157 Mass. 17, 18. *Shaw* v. *Boston & Albany Railroad,* 159 Mass. 597.     *Bill dismissed.*