BOSTON BAPTIST SOCIAL UNION & another *vs.* TRUSTEES
OF BOSTON UNIVERSITY.

Suffolk. March 10, 1903. — April 1, 1903.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Easement,* Equitable restriction.

A deed imposed the following restriction for the benefit of adjoining land, on which
was a church: " This conveyance is subject also to the restrictions that the house
to be erected upon said lot shall be not more than three stories high above the
basement, and that the basement shall not be more than four feet above the level
of the sidewalk of Somerset Court, and that the L part of said house shall be on.
the westerly line, and shall not exceed in front twenty feet in height above the
level of the yard, and shall not exceed twelve feet in depth from outside to out-
side of the walls." On the same day the religious society owning the church
conveyed to the same grantee a strip of land one foot wide along the boundary
line between the two lots, and gave a right to set steps upon its land leading to
the basement door of the house to be erected by the grantee, and a right to
place two windows in the attic, two in the basement and one in the kitchen of
the house, and the privilege of purchasing another strip twelve feet wide, in case
the society should offer it for sale. Within a month the grantee made a contract
for the construction of a house which was built in accordance with the restric-
tions. *Held,* that the restrictions had reference to existing conditions and applied
only to the house then to be erected.

PETITION, filed May 22, 1902, under R. L. c. 182, § 11, to
determine the validity of a possible equitable restriction on cer-
tain land of the petitioners in Ashburton Place in Boston.

In the Superior Court the case came on to be heard before
*Richardson,* J., who reserved it upon the pleadings and an agreed
statement of facts for determination by this court.

*John Chipman Gray & Roland Gray,* for the petitioners.

*H. N. Shepard,* for the respondent.

KNOWLTON, C. J. This is a petition brought under the pro-
visions of R. L. c. 182, § 11, to determine the validity of a certain
incumbrance upon land of the petitioners. One of the petitioners
holds its title as mortgagee, the other as the owner of the equity.
The Boston Baptist Social Union, the owner of the equity, which
corporation we will call the petitioner, has succeeded to the title
of lot numbered sixteen on a plan of lots upon Ashburton Place,
formerly called Somerset Court, owned by George W. Crockett

prior to February 21, 1844. At that time the Mount Vernon Congregational Society owned the lot next easterly on the same street, now owned by the respondent, upon which a church edifice had been erected. On that day Crockett conveyed to one Adin Hall the lot in question which is now the petitioner's, by a deed containing this restriction : "This conveyance is subject also to the restrictions that the house to be erected upon said lot shall be not more than three stories high above the basement, and that the basement shall not be more than four feet above the level of the sidewalk of Somerset court, and that the L part of said house shall be on the westerly line, and shall not exceed in front twenty feet in height above the level of the yard, and shall not exceed twelve feet in depth from outside to outside of the walls." Crockett owned no other land upon the street or in the vicinity. He has since deceased. On the same day the Mount Vernon Congregational Society conveyed to Hall for a consideration of $100, a strip of land one foot wide along the boundary line between the two lots, running back forty feet from the line of the street, and gave a right to set steps upon its land leading into the basement door of the house to be erected by Hall, and a right to place two windows in the attic, two in the basement and one in the kitchen of said house. It also gave him a right to purchase a strip twelve feet in width, extending from the street back to the rear on the westerly side of its lot, on certain terms, in case its lot should be offered for sale. The restriction in question in this case was not mentioned or referred to in any writing except the deed from Crockett to Hall. On March 26, 1844, Hall made a contract for the erection of a dwelling house on his lot, which was a substantial brick structure erected according to the restrictions contained in the deed from Crockett. On June 27, 1892, Susan C. Warren and others, who then owned the lot now owned by the petitioner, made an indenture with the said Mount Vernon Society, which was duly recorded, wherein it was agreed that the restriction in question should be deemed and taken to have been imposed for the benefit of the land of the Mount Vernon Congregational Society.

The petitioner owns other land adjoining the lot referred to, and it desires to take down the house and erect for its use a large building, more than three stories high, covering this lot

and its other lots.  The question is whether it lawfully can do this in view of the restriction.

We will assume in favor of the respondent that the restriction was imposed for the benefit of its lot, and that it is entitled to any advantage coming from it, and we will at once inquire what was the meaning of the restriction when it was imposed.  Was it equivalent to the creation of an easement in favor of the respondent's lot, giving the owner a right to insist that no building should ever be erected on the petitioner's lot different from that referred to in the restriction ?  Or, was it a provision in reference to the particular house which the parties then had in mind, and which Hall proposed to erect, and which they assumed would be likely to determine the nature of the occupation and use of the property for a long time?

The reasons for Crockett's desire to impose a restriction for the benefit of the religious society do not appear.  There is nothing to show that they were pecuniary.  Perhaps he was a member of the society, or otherwise interested in its welfare.  But there is nothing to show that he cared to put a heavy and permanent incumbrance upon Hall's property for the society's benefit.  The reference in the restriction is only to " the house to be erected upon said lot."  The details stated afterwards in the same sentence, tend to show that a house of a definite and particular construction was contemplated.  In less than a month Hall made a contract for the construction of this house.  The deed from the Mount Vernon Society to Hall, made on the same day as Crockett's deed, refers to windows in the attic, in the basement and in the kitchen of the house.  There is no doubt, therefore, that this restriction had reference to a particular house.  From the photographs in the case, it appears that this was a substantial brick house, three stories high above the basement, besides an attic, and the parties to the deed well might have thought that the erection of such a house imposed upon the premises as much of permanency as to the condition and use of them as was desirable.  Of course it was possible for the owner to tear down the house the next year ; but the condition of the street and the other property in the vicinity were such that nobody at that time would expect such a house to be taken down or materially changed in its external construction for many years.  The

agreed statement finds that after the expiration of nearly three-score years, it " now remains substantially as erected."   There is not a word in the restriction which is used otherwise than as a part of the description of this house.   There is no reference to the use that may or may not be made of the property, further than to provide that this house, which was then to be erected, should be built in a specified way.   If it had been the intention of the grantor to put a restriction upon the land for all time, it would have been easy to say so.   As the restriction was created by the grantor, the words which he used are not to be extended in their meaning, but are to be interpreted most strongly against him.   *Welsh, petitioner,* 175 Mass. 68.   It is not for the interest of the community, nor is it the policy of the Commonwealth, that, as conditions greatly change in our large cities, restrictions put upon land in reference to the quiet of residential streets should continue, when the neighborhood is entirely given up to business, unless they are so expressed as plainly to be binding. See *Jackson* v. *Stevenson,* 156 Mass. 496, 502.   Such restrictions created since the enactment of the St. 1887, c. 418, (R. L. c. 134, § 20,) cannot remain in force longer than thirty years.

The deed relied on fails to furnish evidence that it was the intention of the parties to create an easement upon the petitioner's land, in favor of the church property, beyond the benefit that would accrue to it from the assurance that the house then to be erected should be of a certain description.   To this extent, in view of the conveyance from Susan C. Warren and others, we treat the restriction as binding upon the grantee, and enuring to the benefit of the adjacent estate.

In its essential features, in reference to the question whether the restriction is temporary or permanent, we think this case is very much like *Hubbell* v. *Warren,* 8 Allen, 173, and *Hamlen* v. *Keith,* 171 Mass. 77, in which it was decided that the restrictions had reference only to existing conditions.   In *Stone* v. *Pillsbury,* 167 Mass. 332, 337, it was held, where the terms of the restriction were not very plain, that it should not be extended beyond that which it clearly included.   See also on this point, *Clark* v. *Devoe,* 124 N. Y. 120 ; *St. Andrew's Lutheran Church's appeal,* 67 Penn. St. 512 ; *Hutchinson* v. *Thomas,* 190 Penn. St. 242 ; *In re Fawcett,* 42 Ch. D. 150, 155.

We are of opinion that this restriction does not affect .the right of the petitioner to take down the dwelling house upon its lot and erect a higher building.

*Decree accordingly.*