AMERICAN UNITARIAN ASSOCIATION vs. LAURENCE MINOT
& another, trustees, & others.

Suffolk.   March 4, 1904. — May 19, 1904.

Present: KNOWLTON, C. J., HAMMOND, LORING, & BRALEY, JJ.

*Practice, Civil,* Report.   *Equitable Restrictions.   Deed.   Words,* "House to be built."

A petition under R. L. c. 182, §§ 11–14, to determine the validity, nature and extent of alleged restrictions on land is a proceeding at law, and a decree therein must be ordered by a judge of the Superior Court before he can report the case for determination by this court.

In case of doubt a clause creating an equitable restriction on land is to be construed against the grantor and to favor freedom from restriction.

The duration of an equitable restriction on land is a question of the intention of the parties to be arrived at by construing the words of the deed in the light of the attending circumstances.

A provision in a deed of one of six city building lots on which the erection of a uniform block of six private dwelling houses is anticipated, that "the front line of the house to be built on the lot" shall be set back from the line of the street as marked and laid down on a certain plan, creates a restriction relating only to the house to be built at that time.

If a deed of a city building lot creates a restriction of set back relating only to the house to be built there at that time, and refers to a plan on which a line extending across this and other lots is marked "Front line of buildings", the more general words on the plan cannot extend the restriction beyond its definition in the deed.

Whether on a petition under R. L. c. 182, §§ 11–14, to determine the validity, nature and extent of an alleged restriction on land, the court can take into consideration the fact that changed circumstances have made the enforcement of the restriction inequitable, as would be done in a suit in equity to enforce the restriction, *quære.*

PETITION, filed July 24, 1903, to determine the validity, nature and extent of certain alleged restrictions on the petitioner's land at the corner of Beacon and Bowdoin Streets in Boston.

The case was entered on the equity docket of the Superior Court and came on to be heard before *Hardy,* J., upon the pleadings and an agreed statement of facts.   Following the form of reservation in regard to which no question had been raised in *Boston Baptist Social Union* v. *Boston University,* 183 Mass. 202, the judge at the request of the parties reserved the case for determination by this court.   The case first was argued in this

court on January 22, 1904. At the argument, the counsel for
the petitioner pointed out that the petition was a proceeding at
law, citing *Crocker* v. *Cotting*, 173 Mass. 68, 69, 181 Mass. 146,
153. By a rescript issued on January 25, 1904, the reservation
was discharged and the case was remitted to the Superior Court

in order that a decree might be made by the trial judge. In
the Superior Court the case was again presented to *Hardy*, J.,
who made a decree declaring that the restrictions in question
were intended to apply to all buildings which at any time might
be erected on the lots in question by the original grantees or
by their successors in title, and that the right to enforce these
restrictions was appurtenant to each of the six lots on Beacon
Street mentioned in the opinion and shown on the plan printed
in this report. At the request of the parties the judge reported
the case for determination by this court. If the decree was
right, it was to be entered; otherwise such modification was to
be made therein or such other order was to be made as law and
justice might require. Coming again before this court the case
was argued on March 4, 1904.

On the foregoing page is a reduced copy of a part of the plan of Alexander Wadsworth, surveyor, dated October 13, 1843, which is referred to in the opinion.

*H. W. Putnam*, for the petitioner.

*H. M. Davis*, for the respondents Minot and Bowditch, trustees.

*A. Sanford & G. E. Smith*, for the respondents McAleer, submitted a brief.

LORING, J.  This is a petition under St. 1889, c. 442, now R. L. c. 182, § 11, in which the petitioner seeks to have it decided that the equitable restriction is no longer in force which was created by two deeds under which it claims title executed and recorded in 1843.  The land of which the parcel now owned by the petitioner was then a part was divided at that time into building lots by the owners of it, who caused the plan of it, dated October 13, 1843, to be made and recorded.  The land is there divided into six lots, with a frontage on Beacon Street varying from twenty-seven to thirty-three feet.  There is a line on the plan entitled " Front line of buildings," which is fifteen feet back from the northerly line of Beacon Street at its easterly end and twenty feet back from that northerly line at its westerly end.  All six lots were conveyed by deeds dated October 27, 1843, and acknowledged, two on November 1, one on November 9, one on November 10, one on November 13, and one on November 16.  The deeds under which the plaintiff claims title were acknowledged on November 9 and 13.  In the deed of lot 2 is this clause: " But this conveyance is with the restriction that the front line of the house to be built on the lot thereby granted shall be set back from the northerly line of Beacon street as marked and layed down on said plan, except that said Preston shall elect to build a house with a swelled front and in such case he may place the extreme swell three feet out from said front line, and the partition walls above the cellar floor shall be of the thickness of one brick and a half, unless the owners of the adjoining lots shall otherwise agree with said Preston and the walls shall be erected on the dividing line of the lots, one half on each lot, and if the owner of either lot shall refuse to build on the request of the owner of the adjacent lot, the latter shall have the right to erect the wall and the owner shall pay

one half part of the reasonable cost thereof, or of such portion of the same as he shall at any time thereafter use. The above granted premises being the same which are delineated on a plan by Alexander Wadsworth as lot No. 2, which plan is recorded herewith in Suffolk Registry." In the deed of each of the other lots, except lot 1, is the same clause excepting only the number of the lot inserted in the final sentence as the number of the lot conveyed. There is a similar clause in the deed of lot 1. In that clause it is provided that "the house to be built on the lot hereby granted shall be set back twenty feet from the northerly line of Beacon street as marked· on the plan hereinafter mentioned."

The petitioner is the owner by mesne conveyance of the whole of lot 1, and all of lot 2 except the northerly jog and one foot on the east which were conveyed to the owner of lot 3 in November, 1843.

It appears that six private four story brick dwelling houses, each with a swell front complying to the restrictions, were erected on the several lots immediately after the delivery of the deeds, and were occupied as residences until 1884 in case of lots 1 and 2, when those lots (with the negligible exceptions already stated) were sold to the petitioner, and in case of lots 3, 4 and 5 until they "were removed recently and the Hotel Bellevue, an eleven (11) story steel frame structure, [was] erected in their place and upon the adjacent part of lot 7, while that on lot six (6) has been lately increased two stories in height and otherwise altered to adapt it to use in connection with said hotel."

The petitioner concedes that the two lots now owned by it were orginally subject to an equitable restriction imposed for the benefit of the other four lots, but it contends that this restriction should be construed as the restrictions there in question were construed in *Hubbell* v. *Warren*, 8 Allen, 173, *Hamlen* v. *Keith*, 171 Mass. 77, and *Boston Baptist Social Union* v. *Boston University*, 183 Mass. 202, namely, to be restrictions confined to the first building erected, and which expired when that building was torn down.

The two dwelling houses erected on the two lots now owned by the petitioner were torn down, as we have said, in 1884, and

if the petitioner's contention is correct this restriction on these two lots came to an end at that time.

In each of the three cases already mentioned as cases relied on by the petitioner there was some one of several considerations none of which are in the case at bar.

In *Hubbell* v. *Warren*, the agreement relied on was not found in the deed of conveyance but was in the form of a collateral oral agreement. What the exact terms of that agreement were did not appear.

In *Hamlen* v. *Keith*, there was no equitable restriction providing in terms for a building line. To make out such an equitable restriction, the plaintiff relied on a common law condition imposed in 1795, that "all buildings to be erected on the lands sold by virtue of this vote shall be regular and uniform, and of brick or stone, and covered with slate or tile, or some materials that will resist fire." The conclusion of the court is summed up in these words: "We are of opinion that the words are given sufficient force if they are confined at most, so far as the present question is concerned, to the original construction of the buildings first erected, — those which it was expected would be erected and which were erected in fact soon after the town had made its sales. It seems to us that it would be going too far to interpret the words as binding the owner of every lot into which the land might be cut up to adhere for all time, and under whatever change of conditions and circumstances, to a building line other than that of the conveyances, determined by the accident of what the first builder chose to do."

In *Boston Baptist Social Union* v. *Boston University*, the grantor of the deed containing the restriction (which the defendant in that case contended it was entitled to enforce) at the date of that conveyance did not own the adjoining land afterwards acquired by the defendant. The court passed by that difficulty of the defendant in making out its right (a difficulty like that dealt with in the subsequent case of *Hazen* v. *Mathews*, 184 Mass. 388,) and assumed that it was not of itself fatal. But that fact constituted an important consideration in construing the words "the house to be erected," which were the words of that agreement as they are of the agreement now under consideration.

On the other hand the principal cases relied on by the defendants in the case at bar do not go so far as they ask us to go here. They are *Keening* v. *Ayling*, 126 Mass. 404, *Sanborn* v. *Rice*, 129 Mass. 387, *Ayling* v. *Kramer*, 133 Mass. 12, *Kramer* v. *Carter*, 136 Mass. 504, and *Hamlen* v. *Werner*, 144 Mass. 396. All these cases contain the same clause relied on as establishing a restriction, and that clause is in the form of "conditions" which were held to be restrictions and which were as follows: (1) That the taxes should be paid by the grantee; (2) that "the front line of the building which may be erected" should be set back fifteen feet; (3) that "the building which may be erected" should cover the whole lot; (4) that "no dwelling house or other building except the necessary outbuildings shall be" placed on the rear of the lot; and (5) that no building which may be erected shall be less than three stories in height nor have exterior walls of any other material than brick, stone or iron, nor be used or occupied for any other purpose or in any other way than as a dwelling house during the term of twenty years.

In *Kramer* v. *Carter*, 136 Mass. 504, 506, W. Allen, J. stated that "in that deed were certain conditions which operated as restrictions, and created a perpetual servitude upon the land in favor of adjoining lands, one of which was that no building should ever be erected upon a certain part of the land." It is not necessary to inquire whether that referred to the set back in front or to the restriction forbidding any buildings in the rear of the lot. It is evident that the terms of the "conditions" creating the restrictions there in question, when taken as a whole, are not sufficiently near those now before us to make that expression of opinion of value here. It should be added that in *Sanborn* v. *Rice*, 129 Mass. 387, and *Hamlen* v. *Werner*, 144 Mass. 396, the things complained of were additions to the original buildings. For that reason the question whether the restrictions applied to all buildings whenever erected or were confined to the building first erected did not arise, and there is no expression of the opinion of the court upon it.

The question in *Jeffries* v. *Jeffries*, 117 Mass. 184, 189, also relied on by the defendants, was not as to the duration of the restriction. The word "never" in the clause creating the restriction disposed of that. The question in that case was

whether the clause applied to the roof of any and all buildings or was to be held to be confined to the roof of a stable. The clause was this: " provided that the roof of the aforesaid stable shall never be raised more than thirteen feet above Olive Street." It was held to apply to the roof of any and all buildings thereafter erected on the lot then covered by the stable and on this ground: " As a restriction, it must be construed beneficially, according to the apparent purpose of protection or advantage to the several estates, which it was intended to secure or promote. Its leading and most obvious purpose was to prevent the intercepting of light, air and prospect, by a building or roof raised beyond the height named. So far as that purpose was concerned, it would make no difference for what the building should be occupied." For a case where the same consideration determined the construction, see *Chase* v. *Walker*, 167 Mass. 293.

Finally, it has been laid down by this court that in case of doubt a clause creating an equitable restriction is to be construed against the grantor and in favor of the grantee's right not to have his land restricted. *Stone* v. *Pillsbury*, 167 Mass. 332. *Welsh, petitioner*, 175 Mass. 68. *Boston Baptist Social Union* v. *Boston University*, 183 Mass. 202.

The duration of an equitable restriction is a question of the intention of the parties, to be determined by construing the words used in the light of attending circumstances.

The line which is described in the deed is characterized on the plan referred to in the deed as " Front line of buildings." Had the clause in the deed creating the restriction gone no farther than to adopt that characterization, the case would be a very different one from that now before us, and might well be held to apply to all buildings thereafter erected on the land, having regard to the consideration which was decisive in *Jeffries* v. *Jeffries*, and in *Chase* v. *Walker*.

But in determining what the extent of the restriction is, the language of the clause creating it must be decisive if (as is the case here) it undertakes to define in terms its extent. In the case at bar the clause provides " that the front line of the house to be built on the lot thereby granted shall be set back from the northerly line of Beacon street as marked and layed down on said plan." These are the exact words of the clause in

the deeds of lots 2, 3, 4, 5 and 6. The clause in the deed of lot 1 is the same except that the words "twenty feet" are inserted after the words "set back," a difference of no consequence in this connection.

The conclusion cannot be avoided that, as matter of construction of this clause, the restriction created by it does not go beyond "the house to be built" at that time. If the plan imports more than the deed, the provisions of the clause of the deed creating the restriction in which the parties have undertaken to define the extent of it must prevail over the characterization of the line on the plan referred to in the deed. The habendum clause by which the estate conveyed "subject to the restrictions" aforesaid is limited to the heirs and assigns of the grantees finds full scope in the possibility of the buildings lasting beyond the lives of the several grantees and of the land being built upon by persons claiming under the grantees and not by the grantees themselves.

It may well be assumed that the restrictions in question were assented to in anticipation of the erection of the uniform block of six four story private dwelling houses which were erected "immediately after" the deeds of the six lots were given, and that all the parties thought it to be the wisest course to limit the restrictions to the life of those houses which were not likely to be torn down for many years and which in fact stood, those on lots 1 and 2 for forty years, and those on 3, 4, and 5 for more than forty years, while that on lot 6 is still in existence. See in this connection *Boston Baptist Social Union* v. *Boston University*, 183 Mass. 202, 204, 205. The conclusion reached is in general accord with the rule of construction since adopted by the Legislature by St. 1887, c. 418, now R. L. c. 134, § 20.

There are cases where covenants in terms somewhat like the clauses creating this equitable restriction have been held to be covenants personal to the parties. See *Hutchison* v. *Thomas*, 190 Penn. St. 242; *In re Fawcett*, 42 Ch. D. 150; *Clark* v. *Devoe*, 124 N. Y. 120.

In the construction which we have given to these deeds it is not necessary to consider whether in such a proceeding as that now before us considerations such as were held to be decisive in *Jackson* v. *Stevenson*, 156 Mass. 496, can be considered.

A decree must be entered declaring that the parcels of land belonging to the petitioner and described in this petition are no longer subject to the restriction contained in the deeds dated October 27, 1843, as to the house to be erected thereon being set back from the northerly line of Beacon Street.

*Decree accordingly.*