# DeSanno *v.* Earle, Appellant.

*Deeds—Covenants—Restrictions—Recital — Personal covenants —Covenants running with the land—Building restrictions—Design and location of building—Ambiguity—Construction by parties.*

1. In construing covenants in deeds restricting the use of land, such stipulations will be construed against the grantor and in favor of the free and unrestricted use of the property, and nothing will be regarded as a violation of the condition that is not in plain disregard of its express words.

2. The test in determining whether a particular covenant runs with the land is the intention of the parties, and, to ascertain such intent, resort may be had to the words of the covenant read in the light of the surroundings of the parties and the subject of the grant.

3. If the language is ambiguous, and the parties have put their construction on it in the past, such construction is considered the best evidence of their intent.

4. The mere recital of a restriction in later deeds can not have the effect of enlarging the original obligations of a covenant in an earlier deed, whatever they were.

5. The liberty to the free enjoyment of land conveyed in fee simple is not perpetually destroyed by a covenant which requires the construction of a single building of defined material, design and location, "of sufficient value to secure" a yearly ground rent assessed on the premises by the deed, where there are no words of perpetuity in the deed.

6. Such a covenant is merely a personal one, and is performed by the construction of the building contemplated at the time it was made, and continues only so long as such building remains in existence.

Argued January 10, 1922.    Appeal, No. 119, Jan. T., 1922, by defendant, from decree of C. P. No. 1, Phila. Co., March T., 1920, No. 7312, on bill in equity, in case of A. Paul DeSanno v. George H. Earle, Jr.    Before FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ.    Reversed.

Bill for injunction to prevent violation of building restriction in deed.    Before PATTERSON, J.

The opinion of the Supreme Court states the facts.

The location of the building in controversy, the second from the corner, is shown by the half-tone insert:

Decree for plaintiff.    Defendant appealed.

*Error assigned,* inter alia, was decree, quoting it.

*John A. McCarthy,* for appellant.—The test by which to determine whether a covenant in a deed runs with the land is the intention of the parties.    To ascertain the intention, resort must be had to the words of the covenant read in the light of the surroundings of the parties and the subject of the grant: Landell v. Hamilton, 175 Pa. 327; Bradley v. Am. T. & T. Co., 54 Pa. Superior Ct. 388; Dark v. Johnston, 55 Pa. 164; Hudson v. Watson, 5 Pa. Superior Ct. 456; Gilmore v. Times Pub. Co., 18 Pa. Superior Ct. 363; Jones v. Wyomissing Club, 261 Pa. 190; American Unitarian Assn. v. Minot, 185 Mass. 589; Bos-

ton Baptist Social Union v. Boston University, 183 Mass. 202; Hubbell v. Warren, 8 Allen 173; St. Andrew's Lutheran Church's App., 67 Pa. 512.

The original covenantee has released to the original covenantor, while the title of the entire tract was still in the latter, the said land from all restrictions and reservations in the deed of extinguishment of the ground rent; which ground rent the provisions were intended to further secure and protect by the express terms of the deed creating it.

The "under and subject" clauses in the deeds to both appellant and appellee cannot either revive the old alleged restriction or create a new one.

*John Weaver*, with him *E. F. Glenn*, for appellee, cited: Overdeer v. Updegraff, 69 Pa. 110; Phillips v. Phillips, 48 Pa. 178; Kieffer v. Imhoff, 26 Pa. 438; McCarthy v. Kitchenman, 47 Pa. 239; Muzzarelli v. Hulshizer, 163 Pa. 643; Landell v. Hamilton, 175 Pa. 327; Liquid Carbonic Co. v. Wallace, 219 Pa. 457.

OPINION BY MR. JUSTICE FRAZER, March 20, 1922:

In 1864 Michael Bouvier conveyed to Richard J. Dobbins a lot of ground situated on the southwest corner of Broad and Thompson streets, Philadelphia, fronting seventy-five feet on Broad Street, by deed containing the following clause: "Under and subject, nevertheless, to the express restriction that the dwelling house to be erected on the hereby granted lot of ground shall recede twenty feet from the west line of Broad Street so that the front thereof shall be on a line with the dwelling house now being erected by said Job Z. DeHaven on ground adjoining to the southward. And also that the front of the building so to be erected shall be of brown stone and design the same or as good as that of the said house now being erected by said Job Z. DeHaven." This was followed by a reservation of a yearly ground rent of $875, with the further provision: "Also that he, the said Rich-

ard J. Dobbins, his heirs and assigns, shall and will within [blank] from the date thereof erect and build on the said hereby granted lot a substantial three-story brick dwelling house with brown stone front as hereinabove mentioned of sufficient value to secure the yearly rent hereby assessed."

Six weeks later Richard J. Dobbins conveyed the premises to Edward T. Dobbins who, in turn, conveyed to Henry D. Esher. Esher performed the building covenant by dividing the lot into three parts, each having twenty-five feet frontage known as Nos. 1248, 1250 and 1252 North Broad Street, and erecting three dwellings instead of one, each having the required brown stone front and standing twenty feet back from the street. The three buildings were later reconveyed to Richard J. Dobbins, without mentioning the restrictions, and nine months later Bouvier extinguished and released the ground rent to Dobbins. Dobbins, in 1856, conveyed No. 1248 to Alfred Doy, without mentioning the restrictions, and, by various mesne conveyances title to this property after numerous transfers finally became vested in defendant. None of the conveyances referred to the existence of restrictions until 1919, at which time a conveyance was made from the Provident Life and Trust Company et al. to John F. Brown, in which was a clause "under and subject, nevertheless, to certain building restrictions mentioned in the hereinbefore recited deed." It appears, however, that the "hereinbefore recited deed" in fact contained no restrictions. Brown conveyed to defendant by deed which recited the conveyance to him and purported to be "subject to certain building restrictions therein mentioned."

No. 1252 North Broad Street was conveyed by Dobbins in 1866, without mentioning restrictions, and this property, after passing through the hands of nine different owners, finally became vested in plaintiff. No mention was made in any deed concerning restrictions until 1915, when the deed to Hussey, plaintiff's immediate prede-

cessor in title, contained a recital that the previous conveyance had been made "under and subject to the restrictions that the dwelling house erected on said lot should recede twenty feet from the west line of Broad Street so that the front thereof should be on a line with the dwelling on the lot adjoining to the south; and also that the front of the dwelling should be brown stone and of same design as that on the lot to the south." The earlier conveyance referred to did not contain such restriction. At the time Hussey conveyed to plaintiff he did so "subject to certain building restrictions as in L. R. B. 2, page 506," this reference being to the record of the original deed of the unimproved lot from Bouvier to Dobbins.

It thus appears that, the original covenant to build having been performed and Dobbins having secured a release of the ground rent, he conveyed both lots in question without express provision to perpetuate the covenant attached to the original tract; and as to defendant's lot, with which we are now concerned, there was no creation or intent to create a new covenant, since the only reference was to a record which did not, in fact, contain the restriction mentioned.

Defendant razed the building on No. 1248 and began the erection of a modern business structure, extending forward to the building line of Broad Street. Plaintiff thereupon filed this bill to restrain the construction of the building, alleging a violation of the original restrictions with respect to the location and design of the building permitted to be erected. A mandatory injunction was granted and defendant appealed.

The mere recital of the restriction in the later deeds could not have the effect of enlarging the original obligations of the covenant, whatever they were: Hamlen v. Keith, 171 Mass. 77. Consequently, the rights of the parties must be determined from a consideration of the original covenant in the deed from Bouvier to Dobbins. Defendant contends this covenant was extinguished and

the grantee released from the restrictions by virtue of the extinguishment of the ground rent by the original grantor to the original grantee, followed by conveyance by the latter free from restriction. In the view we take of the logical effect of the original restrictions it becomes unnecessary to consider this question.

Covenants in deeds are mainly of two kinds, real or personal. Those so closely connected with the realty that their benefits or burdens pass with it to subsequent purchasers are real covenants. On the other hand those intended to bind the covenantor only and not to become a charge on the realty are personal covenants: Black's Law Dictionary, 294; 15 C. J. 1220. In construing covenants restricting the use of land we must bear in mind the general rule that such stipulations will be construed most strictly against the grantor and in favor of the free and unrestricted use of the property and nothing will be regarded as a violation of the condition that is not in plain disregard of its express words. Such restrictions are not favored by the law and the courts will not recognize implied rights or extend covenants by implication: Crofton v. St. Clement's Church, 208 Pa. 209, 213; Johnson v. Jones, 244 Pa. 386, 389. The test in determining whether a particular covenant runs with the land is the intention of the parties and to ascertain such intent resort may be had to the words of the covenant read in the light of the surroundings of the parties and the subject of the grant: Landell v. Hamilton, 175 Pa. 327, 333, 334; McCloskey v. Kirk, 243 Pa. 319, 324. If the language is ambiguous and the parties have put their construction on it in the past, such construction is considered the best evidence of their intent: Beedy v. Nypano R. R., 250 Pa. 51, 57.

Applying the foregoing principles of law, it will be observed the covenant here does not contain words of perpetuity. On the contrary it specifically refers to "the dwelling house to be erected" and provides that the front of "the building so to be erected shall be of brown stone

and designed the same or as good as that of the said house now being erected by said Job Z. DeHaven," an adjoining owner. Had the parties contemplated a perpetual covenant running with the land, why should they continually refer to "the building" to be erected, when they might have said any building hereafter erected, or words of similar import? The explanation of the covenant is apparent when we consider the existing circumstances. The grantor created a ground rent he desired to have secured by converting the vacant lot into an income producing property, and, accordingly, provided for the erection of a dwelling to conform in appearance with neighboring homes. He decided, inter alia, that a brown stone front would best harmonize with the surroundings and provided that the house should be so constructed. He did not, however, prescribe this or any other condition as a permanent building restriction. It merely affected the particular building "to be erected." He evidently considered this sufficient protection for his ground rent and beyond the life of that building was not concerned, at least made no provision. Whether future generations might prefer dwellings with marble fronts, or brick fronts, or stone fronts, was immaterial. The grantor was likewise apparently unconcerned as to the location of a future building with respect to the street, since the covenant contained no language indicating an intention that it should be more permanent than the restriction concerning the front design of the building. Under all the circumstances, we cannot avoid the conclusion that the covenant was merely a personal one and was performed by the construction of the building or buildings contemplated at the time it was made, and continued only so long as those buildings remained in existence.

The foregoing conclusion seems to be supported by decisions in this and other jurisdictions. For example, in Hutchinson v. Thomas, 190 Pa. 242, land was conveyed under an agreement whereby the owner agreed to lend money to aid the grantee to construct houses on the prop-

erty. The land was divided into lots and it was provided that the houses to be built were to be located ten feet from the street line. There was no perpetual covenant applying to houses generally. In holding that the cove-nant was personal and did not run with the land so as to prevent the location of future houses nearer the street, this court said (page 246) : "The manifest purpose of the agreement was to secure the development of the property in a manner which Laws [the grantor] considered best calculated to secure the purchase money and the ad-vances which he was about to make. It related to the houses then to be built, and contained no covenant that thereafter houses should not be built on the ground in a manner other than that provided in the specifications, and not even a suggestion can be found in it that no house except of the kind specified shall ever be erected on the ground......Our conclusion is that the agree-ment was a builder's agreement merely; that the cove-nants were personal and for the benefit of the grantor only; that they were fully performed and the agreement at an end when the ground rents and mortgages were paid and the grantor's interest in the property ceased. Under this view of the agreement the appellant has no standing, and the injunction was properly refused."

In Boston Baptist Social Union v. Boston University, 183 Mass. 202, a deed contained a restriction that "the conveyance is subject also to the restrictions that the house to be erected upon said lot shall be not more than three stories high above the basement and that the base-ment shall not be more than four feet above the level of the sidewalk." A house was built in accordance with the description and many years later a subsequent owner de-sired to rebuild in a different manner. It was held the restriction was confined to the particular house, the court saying (page 205) : "There is not a word in the restriction which is used otherwise than as part of the description of this house......It is not for the interest of the community, nor is it the policy of the Common-

wealth, that, as conditions greatly change in our large cities, restrictions put upon land in reference to the quiet of residential streets should continue, when the neighborhood is entirely given up to business, unless they are so expressed as plainly to be binding."

In American Unitarian Assn. v. Minot, 185 Mass. 589, a conveyance provided, that "the front line of the house to be built on the lot hereby granted shall be set back from the northerly line of Beacon Street as marked and laid down on said plan." The court said "the conclusion cannot be avoided that as to the manner of construction of this clause, the restriction created by it does not go beyond the 'house to be built' at that time."

Welch v. Austin, 187 Mass. 256, contains many features similar to the present case, as appears from the following extract from the opinion of the court (page 260): "This case is governed by American Unitarian Association v. Minot, 185 Mass. 589. Indeed there is a reason here for holding the restriction to be thus limited in its duration which we did not have in that case. That is the provision that: 'The front elevation and the material used in the construction of the front on Arlington Street shall correspond with my house adjoining according to the plan of G. J. F. Bryant herewith to be recorded, including a projection of about one foot on the front line as indicated on said plan......The front on Marlborough Street shall be of freestone, and shall correspond as nearly as may be with the front on Arlington Street, or however otherwise said premises may be bounded, measured or described.'" (Page 261): "The parties to the deed in question could have provided that the restrictions should apply to any building erected on the land conveyed so long as the dwelling house then erected on the grantor's land should stand unchanged. But they did not do so. What they did provide was that 'the dwelling house to be built on the granted premises' should be built in the way provided, so as to correspond with the grantor's 'adjoining house.' This might

terminate the duration of the restriction but cannot prolong it. For example, if Brewster had torn down the dwelling house then standing on his lot before a dwelling house was built on the granted premises, the restriction might perhaps have been thereby brought to an end. But by the terms of the provision adopted by the parties the duration of the restriction was measured by the life of 'the dwelling house to be built on the granted premises.' We are of opinion that the restriction created by this deed expires when the dwelling house now on the petitioner's lot is torn down."

Whether a condition was intended to create a mere personal right or an easement appurtenant to other land is always a question of intent. In Beals v. Case, 138 Mass. 138, the court said: "It is always a question of intention of the parties, and, in order to make this rule applicable, it must appear from the terms of the grant or from the situation and the surrounding circumstances, that it was the intention of the grantor in inserting the restriction [condition] to create a servitude or right which should enure to the benefit of the plaintiff's land and should be annexed to it as an appurtenance. There is no language in the deed expressly stating that this condition was inserted for the benefit of the remaining land. It would have been easy to say that it was so inserted if that had been the intention of the grantor."

Plaintiff has referred us to no case, and our examination of authorities fails to disclose any, where a covenant similar to the one here involved has been held to run with the land. The reasoning of the foregoing decisions is, in our opinion, logical and in accord with established legal principles.

The decree of the court below is reversed, the injunction dissolved and the bill dismissed at costs of appellee.