ROTH v. JUNG.

(Supreme Court, Appellate Division, Second Department. January 9, 1903.)

1. DEEDS—COVENANTS—BUILDING RESTRICTIONS—ENFORCEMENT—CHANGE IN NEIGHBORHOOD.

At the time of the execution of a deed to land, the property was in the suburbs, and the surrounding property consisted merely of detached or semidetached houses or villas set back some distance from the street line. Thereafter the surrounding property greatly changed in character; an orphan asylum occupied a block thereby, a brewery was erected on the next street, and flat houses three stories in height were erected on the street line directly opposite the property conveyed, and a street car line constructed on the street. *Held*, that the character of the surrounding property had so changed as to render inequitable the enforcement of a covenant in the deed prohibiting the erection of any dwelling house not set back at least 20 feet from the street line.

Submission of controversy between Henry Roth and Jerome Jung. Judgment for defendant.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

J. Charles Wescher, for plaintiff.
Herman S. Bachrach, for defendant.

JENKS, J. This is a controversy submitted pursuant to the Code of Civil Procedure. The plaintiff, perforce of a covenant, seeks to restrain the defendant from building a certain tenement house. The premises are part of a piece of land 72 feet on Sumner avenue and 175 feet on Willoughby avenue, in the borough of Brooklyn, conveyed in 1858 to one Longhi, and at that time made subject to the following covenant:

"And the said party of the second part, by accepting this deed, hereby covenants and agrees for himself, his heirs and assigns, that no store or grocery shall be erected or kept on said premises, nor any workshop, manufactory, or stable, nor any erection or building that is usually deemed a nuisance, or that shall be offensive in a neighborhood occupied for residences, and that only dwelling houses shall be built upon said premises (except that neat greenhouses or graperies may be built thereon); and, further, that no dwelling houses shall be erected thereon to cost less than twenty-five hundred dollars, and that any house or erection that shall be placed on said premises shall be set or placed back at least twenty feet from the line of the street on which the same shall be placed, and so as to leave a yard of at least twenty feet between any such house or erection and either and each of said avenues."

The plaintiff acquired this land in 1901, and conveyed a part of it to the defendant in 1902, "subject to the covenants and restrictions contained in the former deeds." The defendant is now seised of a lot of land at the northeast intersection of Sumner and Willoughby

avenues in the borough of Brooklyn, 100 feet on Sumner avenue, and 34 feet on Willoughby avenue; and the plaintiff now seeks to enjoin him from the building of a tenement house 34 feet wide on Willoughby avenue, and 90 feet deep on Sumner avenue, four stories high, designed to receive eight families, and located on the building lines of the respective streets, or any other fabric which shall not strictly conform in character and relative location to the terms of the covenant.

This is a covenant in negative terms, and the sole violation charged is of the clause:

"Only dwelling houses shall be built upon said premises (except that neat greenhouses or graperies may be built thereon),  *  *  *  and that any house or erection that shall be placed on said premises shall be set or placed back at least twenty feet from the line of the street on which the same shall be placed, and so as to leave a yard of at least twenty feet between any such house or erection and either and each of said avenues."

The question is further narrowed by the decision of this court in Hurley v. Brown, 44 App. Div. 480, 60 N. Y. Supp. 846, where, following our decision in Sonn v. Heilberg, 38 App. Div. 515, 56 N. Y. Supp. 341, we said, per Cullen, J.:

"In no event would the erection of a flat or tenement house be a violation of the covenant against erecting anything but dwelling houses."

So that the precise question is whether a court of equity should enforce the covenant so as to restrain the defendant from the erection of any dwelling house which is not set or placed back at least 20 feet from the line of the street on which the same shall be placed, and so as to leave a yard of at least 20 feet between any such house or erection and either and each of said avenues. The legal question is whether the equitable principles defined in Trustees v. Thacher, 87 N. Y. 311, 41 Am. Rep. 365, and kindred cases, should be applied to this case. In that case, Danforth, J., writing for the court, said:

"There is, no doubt, difficulty in embodying these principles in any general rule applicable alike to all cases, but in any given instance a court can more easily determine whether it should interfere or leave the plaintiff to his remedy at law."

These principles are but in furtherance of the axiomatic principle that equity will not do inequity. If, in fact, the character and condition of the property to which the contract is attached have been so altered that the terms and restrictions of it are no longer applicable to the existing state of things,—in such cases, says Judge Story (2 Story, Eq. Jur. [13th Ed.] 750), courts of equity will not grant relief, but leave the parties to their remedy at law. Plumer, M. R., whose opinion was requested by Eldon, Ch., in the leading case of Duke of Bedford v. Trustees of the British Museum, 2 Mylne & K. 552, said:

"The question, then, is whether a court of equity is bound to assist a party to do that which neither party contemplated, and whether it would not be inequitable, unreasonable, and unjust to enforce the covenants specifically in the existing state of the property."

And the specific question, it appears, is, in the language of James, L. J., whether, "either by permission or acquiescence, or by a long

chain of things, the property has been either entirely or so substantially changed as that the whole character of the place or neighborhood has been altered" (German v. Chapman, 7 Ch. Div. 271, 279), or whether "there has been such an entire change in the character of the neighborhood of the premises as to defeat the object and purpose of the agreement," so that "it would be inequitable to deprive the defendant of the privilege of conforming his property to that character so that he could use it to his greater advantage and in no respect to the detriment of the plaintiff" (Trustees v. Thacher, supra). In view of the last clause quoted, I may note now that this case does not present the question of any detriment to the plaintiff, so that there is no occasion to consider whether any limitation of the general principle, as, e. g., was announced in Landell v. Hamilton, 175 Pa. 327, 34 Atl. 663, 34 L. R. A. 227, should apply.

The purpose of that part of the covenant that is pertinent is clear enough. The dwelling houses were to be semidetached, with 20 feet of yard space between them and the adjoining streets. Such requirement was entirely proper for suburban quarters, and might well now be enforced if a departure from it would result in the erection of houses on lines out of harmony with the general character of the neighborhood. But if, on the other hand, an enforcement would make a departure with reference to the building lines from the general location of the surrounding buildings erected since the covenant of 1858, and if it would deprive the owner of an opportunity to improve his land as the adjacent lands have been improved, then a court of equity will not interfere. The following facts are established: The said avenues are public streets. In 1880, two surface car tracks were laid on Sumner avenue, by these premises, whereon cars were drawn by horses until 1893, and ever since 1893 and at the present time by an overhead trolley system. In 1873 an asylum for female orphans acquired the block of land bounded on the south by Willoughby avenue and on the west by Sumner avenue, and thereafter put up buildings thereon which it now occupies as a home for orphans. And on the Sumner avenue side it has built a stone and brick fence 15 feet high extending the entire block. On the northeast corner of Vernon avenue, which is the next street to the north, parallel with Willoughby and Sumner avenues, there has stood since 1873 the Ferdinand Muench brewery. Hart street is the next street to the south that is parallel with Willoughby avenue. Subsequent to 1858, a number of flathouses were built on the westerly side of Sumner avenue from Willoughby avenue to Hart street, three stories in height, each house occupying the entire front of the lots and bounded upon the front lines thereof. The building on the southwest corner of Willoughby and Sumner avenues contains shops, and within the last few years, adjoining the said corner premises on the southerly side of Willoughby avenue, there have been erected four tenement houses similar to that now planned by the defendant, of which the front walls stand on the line of Willoughby avenue. While in face of the covenant the burden is upon the defendant, it is significant that the plaintiff, in answer to the defendant's evidence, has not adduced any facts which show or tend to show that the neighborhood is of a character which would make a semidetached residence in har-

mony with its surroundings, or that the building of a house upon the street lines would be a departure from the general character in respect to location. On the other hand, the only facts in evidence tend strongly to show that the district which, in 1858, was probably expected to develop only as the site of semidetached villas and residences, with grounds about them, has in the quarter of a century developed in a fashion radically different, and that the land has been built upon so far as the street lines permit.

As I think that the facts are sufficient to show, in the language of Danforth, J., in Trustees v. Thacher (supra), "such change in the condition of the adjacent property as leaves no ground for equitable interference," I am of opinion that judgment should be rendered for the defendant, but, in accord with the terms of the submission, without costs. All concur.