(163 App. Div. 359)

MINISTERS, ETC., OF REFORMED PROTESTANT DUTCH CHURCH IN GARDEN ST. v. MADISON AVE. BLDG. CO., Inc. (No. 6035.)

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

1. COVENANTS (§ 49*)—BUILDING COVENANTS—CONSTRUCTION.

A restrictive covenant is to be construed strictly against the grantor.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 49; Dec. Dig. § 49.*]

2. COVENANTS (§ 103*)—BUILDING COVENANTS—CONSTRUCTION.

The erection of an apartment house does not violate a covenant forbidding the erection of anything except dwelling houses.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 169; Dec. Dig. § 103.*]

3. COVENANTS (§ 103*)—BUILDING COVENANTS—CONSTRUCTION.

A covenant running with land, which was subdivided into lots in 1847, prohibited the erection of buildings other than brick or stone dwelling

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

houses with the ordinary yard appurtenances, except churches and brick or stone private stables, does not prohibit the erection of high-class apartment houses, for the restriction as to stables merely is a prohibition against the erection of livery stables, and, as apartment houses were unknown at the time the covenant was made, it cannot be presumed that such buildings are within its spirit; the intent being merely to preserve the residential character of the property.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 169; Dec. Dig. § 103.*]

4. SPECIFIC PERFORMANCE (§ 59*)—RIGHT TO SPECIFIC PERFORMANCE.

Where a contract to purchase land was upon condition that the land was not subject to restrictive covenants preventing the erection of an apartment house, specific performance of the contract will be awarded against the purchaser where the court found that the restrictive covenant to which the land was subject did not prohibit apartment houses, for, though all persons who might sue for a violation of a covenant are not bound by the judgment, yet it constitutes a precedent which would probably be controlling, and does not attempt to foreclose the rights of any persons not parties, but expressly recognizes them.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 181; Dec. Dig. § 59.*]

Hotchkiss, J., dissenting.

Submission of controversy between the Ministers, Elders, and Deacons of the Reformed Protestant Dutch Church in Garden Street in the City of New York, commonly known as South Church, and the Madison Avenue Building Company, Incorporated. Judgment for plaintiff.

Argued before INGRAHAM, P. J., and McLAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Jabish Holmes, of New York City, for plaintiff.

John M. Stoddard, of New York City, for defendant.

Tompkins McIlvaine, of New York City, for executors of estate of Emilie De Loosey Navemeyer.

Edmund L. Baylies, of New· York City, for Murray Hill Ass'n, Inc., as amici curiæ.

McLAUGHLIN, J.  Submission of a controversy under section 1279 of the Code of Civil Procedure.  The question which the court is asked to determine is whether the plaintiff can compel the specific performance of a contract for the sale of real property at the southeast corner of Madison avenue and Thirty-Eighth street, in the city of New York.  The plaintiff, a religious corporation, is the owner of the property in question, and contracted to sell it to one Hannan, who assigned all his interest therein to the defendant, which assumed and agreed to perform it.  When the parties met for closing the contract, the defendant refused to take the title on the sole ground that there was a restriction upon the property which would prevent the construction and maintenance thereon of an apartment house of substantially the same quality as the one then under construction at the northwest corner of Madison avenue and Sixty-Eighth street, and that such restriction rendered the title unmarketable.  The contract of sale provided that the premises should be conveyed subject to the restrictive

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

covenants on record affecting them, if such covenants did not prohibit the erection and maintenance of such an apartment house upon the premises, and that the title would not be rendered unmarketable by reason of the maintenance of such house thereon.

The answer to the question submitted must be ascertained by construing the restriction referred to in defendant's objection. This restriction, known as the Murray Hill Restriction, is contained in an agreement made and recorded in 1847 between Mary Murray and others, owners of a tract of land which had been subdivided into lots, in which was included the property in question. By this agreement the parties covenanted and agreed that neither they nor their heirs or assigns would erect or cause to be erected upon any of the lots owned by them, respectively, "any building or erection other than brick or stone dwelling houses of at least two stories in height and with the ordinary yard appurtenances to dwelling houses and except churches and stables of brick or stone for private dwellings."

[1-3] No claim is made that the agreement is not binding and enforceable against the defendant's property. The sole question therefore to be determined is whether the restriction established by the agreement prohibits the erection and maintenance upon the premises of an apartment house of the character of the one described. If the words "dwelling houses" are to be construed as meaning private residences, then the erection and maintenance of an apartment house would violate the restriction. Levy v. Schreyer, 27 App. Div. 282, 50 N. Y. Supp. 584, affirmed on this point 177 N. Y. 293, 69 N. E. 598; Skillman v. Smatheurst, 57 N. J. Eq. 1, 40 Atl. 855. It is urged that the use of the words "private dwellings" in limiting the character of the stables which might be erected indicates that the parties intended only private residences should be constructed upon the tract. But I do not think the reference to private dwellings in describing the character of the stables which might be erected can be construed as limiting or restricting the character of the dwelling houses previously mentioned. The parties intended to permit the erection of stables only for the private use of the dwellers upon the property as distinguished from livery or boarding stables. In providing that only stables for private dwellings should be erected, therefore, the parties to the agreement did not necessarily mean that only private dwelling houses—that is, dwelling houses designed for single families respectively—might be erected; on the contrary, it may well be claimed that the reference to private dwellings, in connection with the stables, while the houses themselves were described only as dwelling houses, shows that the parties knew and intended to make a distinction between dwelling houses and private dwellings. There certainly is as much merit in the one argument as the other, and I do not think the description of the stables which might be erected was intended to or should be considered at all in determining the character of the dwelling houses which might be erected.

A restrictive covenant is to be construed strictly against the grantor. Duryea v. Mayor, 62 N. Y. 592; Blackman v. Striker, 142 N. Y. 555, 37 N. E. 484; Cubbins v. Peterson, 21 App. Div. 241, 47 N. Y. Supp. 685, affirmed on opinion below 163 N. Y. 583, 57 N. E. 1111.

That the erection of an apartment house does not violate a covenant forbidding the erection of anything except dwelling houses is no longer an open question in this court at least. Sonn v. Heilberg, 38 App. Div. 515, 56 N. Y. Supp. 341; Hurley v. Brown, 44 App. Div. 480, 60 N. Y. Supp. 846; Holt v. Fleischman, 75 App. Div. 593, 78 N. Y. Supp. 647; Roth v. Jung, 79 App. Div. 1, 79 N. Y. Supp. 822; Bates v. Logeling, 137 App. Div. 578, 122 N. Y. Supp. 251.

In Sonn v. Heilberg, supra, it was held that a covenant not to erect any building other than of stone or brick, not less than three stories in height, "and the same to be in every way adapted for use as a family residence," would not be violated by the erection of a six-story apartment house.

In Hurley v. Brown, supra, the court refused to enjoin the defendant from erecting a three-story building, with stores on the first floor and flats or apartments above, though a prior grantor had covenanted not to permit the premises to be so used as to injuriously affect the value of the adjacent premises for residence purposes and to erect thereon "a substantial two-story dwelling house to cost not less than $2,500." Cullen, J., said:

"In no event would the erection of a flat or tenement house be a violation of the covenant against erecting anything but dwelling houses."

Holt v. Fleischman, supra, involved the construction of a deed in which the grantee covenanted to erect upon the premises conveyed "a first-class dwelling house," and his grantor covenanted that, whenever her adjoining lots should be improved, such improvement should consist "in the erection of one or more first-class dwelling houses, the fronts of which shall be placed upon a line with those of the other houses." The grantee immediately erected a first-class dwelling house upon the property conveyed. Over 30 years later the defendant started to erect upon the adjoining premises of the original grantor a seven-story apartment house. This court held that the covenant of the original grantor could be enforced against the defendant and that he might be restrained from building beyond the line of the other houses, reversing the judgment of the court below for that reason. But it was held that this covenant was the only one violated, "for we do not regard the erection of this apartment house as being a violation of the covenant as to the character of buildings permitted."

In Roth v. Jung, supra, it was held that the erection of a four-story apartment house did not violate a covenant that "only dwelling houses shall be built upon said premises."

In Bates v. Logeling, supra, this court held that the erection of a well-built apartment house would not violate a covenant not to erect any buildings except first-class dwelling houses.

See, also, Hutchinson v. Ulrich, 145 Ill. 336, 34 N. E. 556, 21 L. R. A. 391.

In the present case the principal objection made by the defendant to the title tendered is that the Murray Hill agreement would prevent the erection and maintenance of an apartment house such as the one referred to in the contract. This building is described at length in the submission and is a first-class apartment house, with rentals ranging

from $1,800 to $7,000 per annum, being equal or superior in construction, arrangement, and finish to the apartments described in Kitching v. Brown, 180 N. Y. 414, 73 N. E. 241, 70 L. R. A. 742. I am of the opinion that the erection and maintenance of such an apartment house would violate neither the letter nor spirit of the restrictive covenant contained in the Murray Hill agreement. The purpose of the agreement was to insure the continuance of the residential character of the restricted district. It would serve no useful purpose to attempt to determine whether the parties intended that the buildings within the restricted district should be private residences, as opposed to apartment houses of the kind described, because the apartment house is a modern development and was unknown in 1847, when the agreement was made.

In Kitching v. Brown, supra, the court traced at some length the development of the modern apartment house and held that a covenant made in 1873 not to erect a tenement house was not violated by the erection of such an apartment house. It appeared in that case that, while tenement houses were known in the city of New York at least as early as 1834, apartment houses of the character described were entirely unknown as late as 1873. Werner, J., writing for a majority of the court, said:

"It is doubtless true that an 'apartment house' like the defendant's is objectionable to many of the residents of the city of New York who are fortunate enough to be still able to live in their own private residences. * * * The truth is that the housing of the middle classes in the city of New York is as much of a problem to-day as was the housing of the poorer classes prior to 1873, and the wishes of the few must give way to the welfare of the many."

It is a matter of common knowledge that in recent years, in the city of New York, there has been a great increase in the number of apartment houses and in their use for housing not only the middle, but the wealthy, class. Since Judge Werner's opinion was written, many palatial apartment houses have been erected, and an ever-increasing number of persons financially able to live in private residences prefer to live in apartment houses. In this condition of affairs, it is idle to say that the parties who made the Murray Hill restrictive agreement in 1847 intended that the district should be restricted to private residences. They, undoubtedly, did intend it to continue as a residential district, but they limited the character of the buildings only to "dwelling houses." Apartment houses, a form of building unknown until long after the agreement was made, are now the dwelling houses of a constantly increasing proportion of the residents of the city of New York. Whether the parties, if they could have foreseen this development, would have provided against it, is purely a matter of speculation. They did provide, however, only against the erection of any buildings other than dwelling houses, and an apartment house of the kind described in the submission certainly does not come within this prohibition.

[4] The further objection that the existence of an apartment house upon the premises would render the title unmarketable, since every other owner of property in the restricted district would be entitled to enforce the agreement and would not be bound by the determination of

the present case, may be briefly dismissed. While every other owner might make the claim that the agreement had been, or was being, violated, the claim could not be based upon extrinsic facts, and the question of law involved does not seem a doubtful one. Mygatt v. Maslen, 141 App. Div. 468, 126 N. Y. Supp. 405; Davidson v. Jones, 112 App. Div. 254, 98 N. Y. Supp. 265.

But conceding that the question is a doubtful one, the cases cited on behalf of defendant are plainly distinguishable. Where the validity of a title depends upon the determination of litigation, foreclosing the rights of persons not parties and so not bound by the determination, then a court will hesitate to enforce specific performance because of the likelihood of further litigation, even though the rights so foreclosed may depend entirely upon questions of law. But the decision of the present case does not foreclose or restrict the rights insured by the agreement in any way; on the contrary, it recognizes and affirms these rights, holding only that they will not be violated by a building of the kind described.

This, I think, was the real ground for the decision in Ebling v. Dreyer, 149 N. Y. 460, 44 N. E. 155. There, the validity of the title tendered depended upon the constitutionality of a statute, and the court held that, having reached the conclusion that the statute was constitutional, the mere fact that other persons were in a position to litigate the same question with respect to the property did not render the title unmarketable. So, in the present case, the decision or determination of the question will not prevent other persons from litigating the same question if they care to do so, but it will be a precedent which will be controlling in any subsequent litigation, the determination of which will hardly be doubtful. For, as was said in Ebling v. Dreyer, supra:

"When the court has carefully examined and deliberately decided a question, its decision becomes a part of the common law, and is binding upon it as well as upon all the other courts of the state. The possibility that it may, at some time in the future, when other parties are before it, disregard its own precedent and decide the same question, depending upon the same facts, in a different way, is so remote that it should not be permitted to arrest the development and destroy the salability of a large tract of land, possibly for a generation."

My conclusion therefore is that the plaintiff is entitled to a judgment against the defendant, directing specific performance of the contract.

INGRAHAM, P. J., and DOWLING, J., concur. HOTCHKISS, J., dissents.