ANGUS CAMPBELL, APPELLANT, V. MARY A. HOBBS ET AL., APPELLEES.

FILED MARCH 13, 1915.   No. 18,039.

Appeal: AFFIRMANCE. Where no errors of law appear in the record and the judgment of the trial court is sustained by the pleadings and the evidence, it will be affirmed.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Affirmed.*

*Stewart, Williams & Brown,* for appellant.

*William B. Price, Ray J. Abbott* and *Hastings & Ireland,* contra.

MORRISSEY, C. J.

Plaintiff was the owner of a house and lot in the city of Lincoln, and on March 1, 1909, he entered into an agreement for the sale thereof to defendant Hobbs. A writing purporting to contain the terms under which the sale was made was drawn up and signed by each of the parties. In the body of the instrument it is provided that plaintiff shall convey the premises free and clear of all liens and incumbrances except certain taxes, and the consideration is fixed at $2,500, but a special clause inserted reiterates the price, shows the payment of $275 in cash, and an agreement on the part of defendant to make a further payment of $128 on or before April 15, 1909, and $28 each suc-

ceeding month until the full sum of $2,225 is paid, with
interest, etc.   It then concludes by saying that the pur-
chaser shall take the title subject to a mortgage of $1,500
given to Crete Loan & Savings Association, with interest
at 6 per cent.   The defendant went into possession of
the premises immediately and made instalment payments
from time to time until November 11, 1911, when he and
plaintiff figured up the balance due on the amount to be
paid in excess of the mortgage and found it to be $80.
This sum was paid, and plaintiff delivered a warranty
deed for the premises.   The deed was in due form, but was
made subject to a mortgage for $1,500 in favor of the Crete
Loan & Savings Association, which mortgage and interest
and taxes for 1911 the grantee assumed and agreed to
pay.   At the time the so-called "articles of agreement" was
signed the real estate was subject to a mortgage of $1,300,
but in compliance with an oral agreement between the
parties plaintiff secured a new loan of $1,500 from the
Crete Loan & Savings Association, and procured the can-
celation of the former mortgage.   In order to secure this
loan plaintiff subscribed for 15 shares of stock in this as-
sociation, and this stock was pledged as collateral security
for the loan, and from month to month thereafter there
was paid upon said loan and stock the sum of $15, thirty-
four payments thus being made.   It is admitted that one-
half of this amount went to pay the interest on the loan,
and the remainder to pay the dues and assessments on the
stock, and that the withdrawal value of the stock at the
time the deed was delivered was $273.60.

Plaintiff brought this action in the district court for
Lancaster county, claiming to be the owner of the stock
and entitled to the benefit of his payments thereon, and
alleged that the defendant Crete Loan & Savings Associa-
tion refused to surrender the stock to him or to pay him the
sum due thereon, and that the defendant Hobbs claimed
the same, or some right therein and refused to permit the
transfer of the stock to him, or to pay him the amount due
thereon, and prayed that he might be decreed to be the
owner of said shares of stock and of the amount of ac-

crued earnings thereon, and that the defendants Hobbs be adjudged to have no right or interest therein, and for equitable relief. The loan association, omitting the formal parts, set out the mortgage and alleged that the stock had been given as collateral security thereto; that it was ready and willing to surrender up the certificates of stock to whomsoever the court might order any time the mortgage loan was paid. The defendants Hobbs answered, admitting the purchase of the property for an agreed consideration of $2,500, and alleged that they had paid the plaintiff the sum of $1,000, together with the accrued interest, and that the plaintiff and his wife had executed and delivered to them a warranty deed to the property described, subject to this mortgage in favor of the Crete Loan & Savings Association, and this mortgage was a part of the purchase price. The court entered a decree in favor of defendants Hobbs, and plaintiff appeals.

The original written agreement is somewhat ambiguous and contradictory, and from an examination of the record we reach the conclusion that the parties themselves did not look to it as a paper containing the entire agreement. Defendant made instalment payments from time to time until November 11, 1911, when he and plaintiff made a settlement, and agreed that there was $80 due the plaintiff. This was paid, and on receipt thereof plaintiff delivered his warranty deed to the defendant. The deed shows that it was made subject to this mortgage of $1,500 and interest, and taxes for 1911. At the time of the delivery of the deed there appears to have been a complete settlement between the parties and it is not contended that there was any mistake in figuring the amount when this balance of $80 was agreed upon. While the plaintiff now contends that he made some mention of a retained interest in the stock of this association, this is directly contradicted by the testimony of the defendant. The defendant's wife was not called as a witness, but it is admitted in the record that, if called, she would testify on this point substantially the same as her husband. On this point the defendant is not only corroborated by his wife, but all of the circum-

Campbell v. Hobbs.

stances corroborate him.    From this time on plaintiff ceased to pay any dues or assessments on said stock, while the defendant immediately assumed their payment.    The conduct of the parties clearly indicates that at the time of this settlement the plaintiff led the defendant to believe that he was taking title to this stock, together with title to the realty.    It is agreed that they figured up the amount due and found it to be $80.    The plaintiff received the money, delivered the deed, they shook hands and parted, and it was two or three months afterward before plaintiff made any demand for the stock or for any credit on account thereof.

The court was warranted in finding that when the plaintiff deeded the land to the defendant he also transferred the stock to the defendant.    From that time on the defendant paid, not only the interest on the money loaned, but also the premiums on the stock.    The plaintiff insists that it was with the understanding that he should be reimbursed for the premiums that he had paid upon the stock up to that time, but no such understanding was expressed to the defendant.    The stock may have been burdened with risks and uncertainties that are not shown in this record, and the defendant plainly understood that he was taking the stock with the land with all of its burdens and risks. The agreement between the parties being indefinite and uncertain and intended in a different sense by the parties, it would seem to come within the rule that in such case the construction should prevail that the plaintiff had reason to suppose the defendant understood it to have.    Rev. St. 1913, sec. 7909.

The judgment of the court is fully sustained by the evidence, and is

AFFIRMED.

BARNES and ROSE, JJ., not sitting.