Argued January 25, affirmed February 20, 1917.

## SCOTT COMPANY *v.* ROMAN CATHOLIC ARCHBISHOP OF OREGON.

(163 Pac. 88.)

**Covenants—Restrictions as to Use of Premises—Validity.**

1. A clause in various deeds from a land company limiting the buildings to be erected on the lots to those designed for residential purposes is valid, even where the building proposed is intended for school purposes or for the erection of a church in absence of written consent, the right to grant which was reserved in the grantor.

**Covenants—Restrictions as to Use of Premises—Validity.**

2. Where the common grantor by a clause in all its deeds restricted buildings to residential purposes, but reserved the right to consent to erection of buildings for school and church purposes, he had the power as against his grantees to give his consent to erection of buildings for such purposes.

83 Or.—7

**Covenants—Restrictions as to Use of Premises—Validity.**

3. Restrictive covenants in a deed are to be construed most strictly against the covenant.

**Covenants—Restrictions as to Use of Premises—Validity.**

4. Provision in deed granting land in an addition restricting buildings to residential purposes, but reserving right to consent to buildings for church and school purposes, was sufficient notice to the vendees that such consent might be granted.

**Covenants — Building Restrictions — Church Purposes—"Convent"— "Nun."**

5. Where grantor in several deeds reserved right to waive residential restrictions in favor of church or school purposes, he could validly grant privilege of erecting a convent, which is a house or building occupied by nuns, who may be designated as women of Catholic religion who live in a convent under vows of poverty, chastity and obedience.

**Covenants—Building Restrictions—"Church Purposes"—"Church."**

6. In such case the erection of a convent may be deemed a "church purpose," since the word "church" applies not only to a building used for worship, but to any body of Christians holding and propagating a particular form of belief, and any building intended primarily for purposes connected with a faith is used for "church purposes."

[As to covenants restricting use of land, see note in 21 Am. St. Rep. 485.]

From Multnomah: ROBERT G. MORROW, Judge.

An injunction suit by the Scott Company, a corporation, and others, against the Roman Catholic Archbishop for the Diocese of Oregon, A. Christie, a corporation. From a decree dismissing the complaint the plaintiffs appeal.    AFFIRMED.

Department 1.    Statement by MR. CHIEF JUSTICE McBRIDE.

This is a suit to enjoin the construction by the defendant of church, school and convent buildings on certain property in the City of Portland and the use of any buildings constructed thereon for church, school or convent purposes. The complaint alleges that in the year 1909 Laurelhurst Company, an Oregon corporation, was the owner of a tract of land which

it platted as "Laurelhurst" and put on the market. The complaint contains the following allegations:

"That for the purposes of rendering said tract, so divided, platted, and laid out as 'Laurelhurst,' more attractive and desirable as a residence and home section, and with the intention, and for the purpose of inducing persons desiring to build and maintain homes, to purchase lots and sites in said addition, said Laurelhurst Company did evolve and make public a general plan, or scheme, for the development of said Laurelhurst Addition as a high class residence and home section, which said plan or scheme consisted of placing certain restrictions on the use and improvement of the blocks, lots and sites in said addition; that as a part of, and for the purpose of rendering said plan, or scheme, effective, said restrictions as to the use and improvement of lots and sites in said addition, said Laurelhurst Company did place in, and include in, each deed executed by it to the purchasers of lots and sites in said addition, a uniform clause setting out said restrictions, a copy of which is hereto attached, marked exhibit 'A' and made a part hereof; that it was the intention of said Laurelhurst Company that the lots and sites so covered by said restrictions should be mutually bound, and should mutually profit by said restrictions."

The restrictions are as follows:

"During the period of twenty-five (25) years from and after the first day of January, 1909, no structure other than (here is inserted the number of dwelling houses, depending upon the number of lots purchased), single detached dwelling house, costing not less than (here is inserted the cost of the dwelling house which varies slightly in different sections of the tract) —— dollars each, and also, if desired, any outbuildings which may be necessary or usual, other than stables, shall be erected upon said premises; nor shall any portion or projection of any such dwelling house or outbuilding (except the steps thereof), be within twenty (20) feet from the nearest side line of

the street upon which the front of said premises abuts, or within fifteen (15) feet from the nearest side line of any other street (it being understood and agreed that if said premises have a frontage on two streets, the foregoing 20-foot restriction shall apply as to each of such front streets); nor shall said premises or any building thereon be used or occupied otherwise than strictly for residence purposes (or for church or school purposes, and then only with the prior consent of the party of the first part, or its successors or assigns); nor shall the same or any part thereof be in any manner used or occupied by Chinese, Japanese, or negroes, except that persons of said races may be employed as servants by residents; nor shall any old buildings be placed on said premises; nor shall any building or any part thereof, on said premises, be erected, maintained, or used for flats, apartments, stables, stores, or business or manufacturing purposes; nor shall any intoxicating liquor be manufactured, or sold or otherwise disposed of as a beverage in any place of public resort, on said premises. And in the event that the restrictions and conditions aforesaid, or any one or more of them, shall be broken by said party of the second part, his heirs, successors, assigns or legal representatives, or by any person holding said premises for, by, through, or under them or any of them, then and in either or any such case this conveyance shall be and become null and void, and the title to said premises hereby conveyed shall revert to said party of the first part, its successors and assigns free from all right, title, or claim arising under or by reason of this conveyance. Provided, however, that in the event of any forfeiture, as hereinbefore provided for, and if there shall, at the time thereof, be any mortgage lien upon said premises, then the holder of such lien shall have the option to take said premises and to hold the same on the same terms and conditions, and subject to forfeiture in his, her, its or their hands for like causes and on the same conditions as hereinbefore provided as against the grantee herein, or his heirs, successors, assigns, or legal representatives. The foregoing con-

ditions, restrictions, and limitations shall apply only to the lots in Laurelhurst, according to the plat thereof recorded at page 77, of Book 475 in the Records of Plats of said Multnomah County, but shall not apply to Blocks A and B, shown on said recorded plat. It is understood that the restrictions as to the cost of buildings on the various lots shown on said recorded plat, vary as to amount, and that the number of dwelling houses permitted vary according to the size of the tract sold, but that not more than one such dwelling house shall be permitted on a single lot, or upon any parcel of 50 feet frontage.''

It is also alleged that each of the plaintiffs has purchased one or more lots or sites, has improved his property and is using it in strict accordance with the general plan of improvement; that plaintiffs bought and improved their property with knowledge of these restrictions and in reliance thereon; that Laurelhurst Company had sold lots 6, 7, 8 and 9 and portions of lots 10 and 11 in block 1, and that by mesne conveyances the defendant acquired title to this property June 15, 1914. On the same day, it is averred, Laurelhurst Company deeded to the defendant lot 5 in block 1. The complaint further recites:

''That each and all of the said lots and sites so purchased by defendant are covered by, and included within, said general plan or scheme of use and improvement, and subject to all the restrictions, as to use and improvement, included in said restriction clause hereto attached as exhibit 'A'; that prior to purchasing said lots and sites defendant had both actual and constructive notice of said restrictions as to the use and improvement of the said lots and sites in Laurelhurst, and the purpose thereof, and knew said restrictions applied to and covered the lots and sites so purchased by him; that notwithstanding said restrictions as to the use and improvement of said lots and sites so purchased by defendant and his knowledge

thereof, defendant now threatens, and proposes to, and unless prevented by order of this court, will disregard said restrictions and erect and construct on said lots and sites, or some one or more thereof, a church building, a school building, and a building adapted to use as, and to be used as, a convent, and threatens to, and unless prevented by the order of this court, will use said buildings for general church, school, and convent purposes, respectively; that the said proposed and threatened violations of said restrictions by defendant, if permitted, will result in great and irreparable loss and damage to these plaintiffs, and each thereof, and will greatly annoy and disturb plaintiffs in their respective homes, and render their said property undesirable as homes, and unsalable for such purpose."

The prayer is that defendant be enjoined from erecting any church, school or convent building on the property transferred to it and from using any building which may be erected thereon for church, school or convent purposes. The defendant demurred to the complaint for insufficiency of facts and the demurrer was sustained. Thereafter the parties entered into the following stipulation:

"It is hereby stipulated and agreed by and between the parties to the above entitled suit, through their respective attorneys, that on the 15th day of June, 1914, the Laurelhurst Company, an Oregon corporation, made, executed, and delivered to the Roman Catholic Archbishop of the Diocese of Oregon, a corporation, sole, organized, and existing under the laws of Oregon, and the defendant herein, a certain deed conveying to said defendant the following described real property in the city of Portland, county of Multnomah, and State of Oregon: Lot 5, in Block 1, in Laurelhurst, according to the map and plat thereof recorded at page 77 of Book 475, in the Records of Plats of said Multnomah County; that said deed contains the following clause: Laurelhurst Company, first

party herein, does hereby consent that Lots 5, 6, 7, 8, 9, and that part of Lots 10 and 11, in Block 1, in Laurelhurst, in the city of Portland, county of Multnomah, and State of Oregon, described as follows: * * may be used by the Roman Catholic Archbishop of the Diocese of Oregon, a corporation, sole, organized, and existing under the laws of the State of Oregon, for residence purposes and/or for church and/or for school purposes, provided that any building constructed or erected upon said premises shall be within the building limits from the adjacent streets as in said deeds therefor provided. And provided further, that the permission thus given to the Roman Catholic Archbishop of the Diocese of Oregon, a corporation sole aforesaid, is personal thereto and shall not be construed as a waiver on the part of the Laurelhurst Company to any assignee of said corporation sole as to all or any portion of said property in this waiver mentioned. And provided further, that if all or any portion of said property in this waiver mentioned shall be resold by the second party herein, then the building restrictions in said deed or deeds therefor, shall again become effective and binding upon said real property and any improvements thereon and shall be covenants running with the land (subject to subsequent waiver by the Laurelhurst Company as in said deed provided), it being the intention hereof that no other covenant, provision, or condition in any of said deeds to any or all of said property is altered, changed, or varied hereby, except as herein specifically mentioned. It is further stipulated and agreed by said parties that the defendant's demurrer to the complaint on file in this case may be considered by the court and a decision rendered thereon in all respects as though the facts above stipulated to and admitted appeared by allegation upon the face of the complaint.''

Plaintiffs having tendered no further pleading the court passed a decree dismissing the complaint. From this decree plaintiffs appeal.     AFFIRMED.

For appellants there was a brief over the name of *Messrs. Stapleton & Conley,* with an oral argument by *Mr. James L. Conley.*

For respondent there was a brief over the names of *Mr. Hall S. Lusk* and *Messrs. Dolph, Mallory, Simon & Gearin,* with oral arguments by *Mr. Lusk* and *Mr. John M. Gearin.*

Opinion by Mr. Chief Justice McBride.

1. The clause in the various deeds limiting the buildings to be erected on lots in Laurelhurst to those designed for residential purposes is a restrictive covenant and is valid even where the building which it is proposed to erect is intended for school purposes: *Doe* v. *Keeling,* 1 Maule & S. 95; *Wickenden* v. *Webster,* 6 El. & Bl. 387. Such a restriction will also be held valid as against the erection of a church within the restricted area: *St. Andrew's Church's Appeal,* 67 Pa. St. 512. It may be taken as settled law that such covenant is valid, and that the buildings which defendant proposes to erect are within the restrictive clause above recited, unless they have been taken out of it by the consent given to the defendant by the Laurelhurst Company.

2. There can be no question but that the Laurelhurst Company having by its conveyances reserved the right to dispense with the restrictive clauses so far as they refer to buildings erected for school or church purposes has a right to waive such restrictions: *Whitehouse* v. *Hugh,* L. R. [1906] 2 Ch. Div. 283. The question, therefore, is whether the dispensing power reserved to the grantor is sufficiently broad to embrace the improvements contemplated by the defendant.

3. It is a familiar rule of law that restrictive covenants are to be construed most strictly against the covenant; and unless the use complained of is plainly within the provisions of the covenant it will not be restrained: *Clark* v. *Jammes,* 87 Hun, 215 (33 N. Y. Supp. 1020); *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289 (82 Atl. 561, 41 L. R. A. (N. S.) 615); *Boston Baptist Social Union* v. *Boston University,* 183 Mass. 202 (66 N. E. 714); *American Unitarian Assn.* v. *Minot,* 185 Mass. 589 (71 N. E. 551); *Crofton* v. *St. Clement's Church,* 208 Pa. St. 209 (57 Atl. 570). Citations supporting this doctrine might be multiplied indefinitely.

4. Keeping in mind the rules above stated we will consider the nature of the restrictions quoted with reference to the case at bar.  As previously intimated the right of the grantor to waive them when such waiver is desired to enable the premises to be used for school or church purposes is unlimited, unless from the peculiar language employed we adopt the view that it was the intention of the grantor to limit the waiver to the use of such buildings for church or school purposes as had already been constructed for residence purposes.  In other words, we are to assume that the grantors, when they inserted in their deeds a clause restricting the use of the granted premises to residence purposes and in the same instrument inserted an exception permitting them to waive such restriction so as to permit the use of the premises for school or church purposes, had in mind the very remarkable contingency that a purchaser might erect a dwelling-house upon the land purchased and afterward conclude to use it as a church or a schoolhouse, and that in such a contingency only would a waiver be effective.  This, in our opinion  would be a very strained and unnatural

construction, and one so evidently contrary to the real intent of the grantor that it must be rejected. It is evident that the grantor was looking forward to a time when the community occupying Laurelhurst would have become large enough to require schools and churches, and that it was its intention to retain authority to permit such buildings to be erected. The form of the conveyance was full and fair warning to every intending purchaser that such buildings might be erected whenever in the judgment of the grantor the appropriate time for constructing them had arrived. The language of the restriction supports this interpretation. We quote from plaintiffs' brief that part of the restrictive clause which plaintiffs deem applicable to the contention here:

"During the period of 25 years from and after the first day of January, 1909, no structure other than a single detached dwelling house, costing not less than $—— each, and also, if desired, any outbuilding which may be necessary or usual, other than stables, shall be erected upon said premises; * * nor shall said premises or any buildings thereon be used or occupied otherwise than strictly for residence purposes, (or for church or school purposes, and then only with the prior consent of the party of the first part or its successors or assigns."

It will be seen that the dispensing power in the grantor is reserved not only with respect to buildings which might at the date of the grant be erected upon the land, but in respect to the placing of other buildings upon the premises (land) granted. Plainly the intent was that the grantee should not use an already constructed residence for school or church purposes; neither was such purchaser to be permitted to erect a building for such purposes in the future without obtaining the consent of the grantor.

5. The only remaining question is whether a convent comes within the restriction. A nun may be briefly designated as a woman of the Catholic religion who lives in a convent under vows of poverty, chastity and obedience. A convent is a house or building occupied by nuns. We are of the opinion that such a building may fairly be termed a residence or dwelling. It is a dwelling place for nuns. It would, therefore, seem, that if the other conditions of the restriction are complied with, it makes no difference how large the dwelling is or how many people occupy it: *McMurty* v. *Phillips Investment Co.,* 103 Ky. 308 (45 S. W. 96, 40 L. R. A. 489), is a case in point. In that case the court said:

"The proof shows that the building complained of is to cost some forty thousand dollars, is to be of brick and stone and its front wall is to be set back the required distance. The controversy is whether this house is to be used for residence purposes only within the meaning of the deed. The explanation of its character and in answer to the claim that there was to be in it a public or semi-public restaurant the originator of the scheme to erect this house testified that 'there is to be no restaurant of a public nature; there is to be everything in this house to make housekeeping comfortable. Every apartment in the house is to have a parlor and dining room and one or more bed rooms and a kitchen. Every apartment is to have more than one bed room; there is only one four-room flat. Provision is made in the house for hot and cold water and all other conveniences. The basement, in which is to be a large dining room, to be used by the occupants of the house if desired, also contains three sets of laundry tubs, that each apartment may have one or more days to use in laundering their linen, or to be used in any way they choose as a laundry is used in a private residence. A part of the basement is to be used for storing the trunks of the parties who may

choose to put their trunks out of their apartments. There is to be nothing about it of a cheap or nasty kind. There is but one house in St. James Court constructed of as fine material and that is the Conrad residence.' It is shown, indeed admitted, that these different apartments or flats are places for persons to reside in, but it is contended that the language of the restriction conveys the idea of a single residence for a single family or at any rate excludes the idea of a number of residences under the same roof or in the same house. We think, however, that to give the language used this meaning, would be to extend its scope beyond the express intention of the parties. The purposes for which the house is to be erected or the court was to be used were 'residence purposes only.' And as the house in controversy is to be constructed for such purpose only and is not to be used for any other purpose, we do not think that its construction is at all prohibited by this restriction clause.''

See also *Roth* v. *Jung,* 79 N. Y. Supp. 823 (79 App. Div. 1); *Johnson* v. *Jones,* 244 Pa. 386 (90 Atl. 649); *Reformed Protestant Dutch Church* v. *Madison Avenue Bldg. Co.,* 163 App. Div. 359 (148 N. Y. Supp. 519); *Bates* v. *Logeling,* 137 N. Y. App. Div. 578 (122 N. Y. Supp. 251); *Re Robertson,* 25 Ontario Law Rep. 286.

6. There is another ground upon which the consent given by the grantor to the defendant can be sustained: That the erection of a convent may fairly be termed a "church purpose," which is the term used in the dispensing clause of the restriction. There is a broad distinction to be drawn between this phrase and the words "for the erection of a church." A building may be erected for church purposes other than those connected with Divine worship. The word "church" applies not only to a building used for worship, but to any body of Christians holding and propagating a

particular form of belief, as for instance the Baptist church, the Methodist church, or the Catholic church; and any building intended to be used primarily for purposes connected with the faith of such religious organization may be said to be used for church purposes. It is a matter of universal, and, therefore, judicial knowledge, that associations of nuns, sisters of charity and the like are as much a part of the organization of the Catholic church as its priesthood, and that convents are as much a part of its organization and church policy as church buildings; and in this sense the erection of a convent is as much a church purpose as a house of general worship. In the case of *Craig* v. *First Presbyterian Church of Pittsburg,* 88 Pa. St. 42 (32 Am. Rep. 417), the question was whether a building intended for the sessions of a Sunday school, ordinary lecture services connected with the church, social gatherings and fairs held for the purpose of raising funds for missionary purposes, with occasionally a "plain tea" for the benefit of those who attended from a distance, was a "religious purpose." The court held that it was, saying:

"If the church requires the buildings for its Sabbath schools and for a lecture room, and such purposes are religious in their nature, as we have endeavored to show, of what possible matter can it be should the church utilize said building by applying it to other collateral objects, not in themselves technically religious, yet germane to the general purposes."

Upon the whole we are of the opinion that the defendant is within its legal rights in erecting and maintaining the buildings described in the complaint; and the decree of the Circuit Court will, therefore, be affirmed.                                     AFFIRMED.

Mr. Justice Burnett and Mr. Justice Harris concur; Mr. Justice Benson taking no part in the consideration of this case.

Mr. Justice McCamant delivered the following dissenting opinion:

In this case we are not embarrassed by any controverted questions of fact. The demurrer admits the allegations of the complaint to be true and challenges their sufficiency in point of law. Many of the legal questions arising on this record are determined by recent and well considered decisions of this court. The validity of the restrictions on which appellants rely is established by *Seeck* v. *Jakel,* 71 Or. 35 (141 Pac. 211, L. R. A. 1915A, 679). The right of appellants to claim equitable relief based on these restrictions is supported by *Duester* v. *Alvin,* 74 Or. 544 (145 Pac. 660). This latter case grew out of the marketing of Overlook Addition to the City of Portland under a general scheme whereby purchasers of lots were required to keep their buildings at least twenty feet from the street line. Restrictions to this effect were inserted in the deeds under penalty, as in this case, of forfeiture of the estate of the grantee to the grantor. In construing this provision in the deeds this court said through Mr. Chief Justice Moore:

"This covenant grants a conditional estate, in the nature of a negative easement, whereby each grantee who secured a title to any land in Overlook Addition with knowledge of the limitations prescribed became seised of a servient estate as to his own premises, and also the owner of a dominant estate in all other lots the deeds to which contained such conditions. * * These restrictions, in the case at bar, prohibit each owner of real property so conveyed from violating the limitations put upon his premises, because a breach

thereof would or might affect the dominant estate therein of some or all other owners of lots. Since his land is subjected to the burdens incident to a servient estate in the premises, he has the corresponding advantage of enforcing in equity his rights in and to the dominant estate as to all other real property the owners of which obtained their title with knowledge of the covenant, and he may prevent any infringement that would or might affect his land."

The conclusion reached in *Duester* v. *Alvin* sustained the injunction passed by the lower court at the instance of purchasers of lots in Overlook Addition restraining other purchasers from constructing houses in closer proximity to the street line than that permitted by the restrictions contained in the deeds.

The case at bar is distinguishable from *Duester* v. *Alvin* in that while the restrictions in that case were absolute, in this case Laurelhurst Company reserved to itself a dispensing power by inserting in the deeds the following language:

"Nor shall said premises or any building thereon be used or occupied otherwise than strictly for residence purposes (or for church or school purposes, and then only with the prior consent of the party of the first part, or its successors or assigns)."

Respondent bases its contentions wholly on the reservation above quoted and admits in effect that in the absence of this reservation and appropriate action by Laurelhurst Company pursuant thereto, appellants would be entitled to the relief prayed for. Respondent contends that this dispensing power extends to the modification of the restrictions in so far as they control the erection of buildings on the property in question. Appellants controvert this construction of the language and contend that Laurelhurst Company has reserved to itself only the power to permit build-

ings erected in accordance with the restrictions to be used for church and school purposes. It is the duty of the court to ascertain the intention of the parties from the language they have used and from the surrounding circumstances.

The restrictions first forbid the erection on the premises, for a period of twenty-five years, of any building other than a detached dwelling-house to each lot, and forbid the erection of such dwelling-house within twenty feet of the street line on which the house fronts. These restrictions have to do with the construction of buildings on the property. The next two provisions have to do with the use and occupation of the property. They are as follows:

"Nor shall said premises or any building thereon be used or occupied otherwise than strictly for residence purposes (or for church or school purposes, and then only with the prior consent of the party of the first part, or its successors or assigns); nor shall the same or any part thereof be in any manner used or occupied by Chinese, Japanese or negroes, except that persons of said races may be employed as servants by residents."

The next provision forbids the placing of any old buildings on the premises. Then follows a prohibition against the erection, maintenance or use of any building on the premises "for flats, apartments, stables, stores or business or manufacturing purposes." The final restriction forbids the manufacture and sale of intoxicating liquors. The restrictions close with penal and explanatory clauses not necessary to be noticed in this connection.

It will be remembered that these restrictions are found in the deeds by which respondent acquired title to all its property except Lot 5 in Block 1, and that title to this lot was taken with full knowledge of the

restrictions and with knowledge that they were a part of a general plan under which the property was being marketed and on the faith of which appellants had purchased and improved their property. Whatever right respondent has to escape the effect of these restrictions must be predicated on the parenthetical clause above quoted. A parenthetical clause ordinarily qualifies the language to which it is attached. This clause is attached to a provision limiting the use and occupation of the premises. The clause to be interpreted consists of a preposition and its objects and a second preposition and its objects. The grammatical construction of the sentence plainly imports that the phrases modify the preceding verbs, "used" and "occupied." The parties permit the premises to "be used or occupied" "for church or school purposes," but "only with the prior consent of the party of the first part." The natural interpretation of the language makes it equivalent to this:

"Said premises or any building thereon may be used or occupied for church or school purposes, but only with the prior consent of the party of the first part, or its successors or assigns."

We cannot apply the language used as a modification of the restriction on the erection of buildings without taking the words out of the connection in which the parties have placed them and putting a forced construction on the language used. As it seems to me, the parties have provided that the premises and buildings situate thereon are to be used for strictly residence purposes and then have qualified this restriction by permitting them to be used for church or school purposes, provided the prior consent of the Laurelhurst Company is secured, and this is the extent to which the restrictions have been modified.

83 Or.—8

The language we are called upon to interpret is found in the deeds executed by Laurelhurst Company to appellants and other purchasers of lots. In the absence of the parenthetical clause appellants would clearly be entitled to the complete relief for which they pray: *Duester* v. *Alvin,* 74 Or., 544 (145 Pac. 660). Whatever the rights of respondent may be to erect or use buildings on the premises for school and church purposes, they are derived through Laurelhurst Company, and these rights are only such as have been reserved by Laurelhurst Company in the parenthetical clause above quoted. It is elementary that a reservation is to be construed most strongly against the grantor: 2 Devlin on Deeds, § 979; *Klaer* v. *Ridgway,* 86 Pa. St. 529, 634. Such reservation cannot be extended beyond the import of its terms: *Fort Wayne* v. *Lake Shore Co.,* 132 Ind. 558 (32 N. E. 215, 32 Am. St. Rep. 277, 282, 18 L. R. A. 367). The language used is that chosen by the Laurelhurst Company and is therefore to be construed most strongly against it: *McFadden* v. *Friendly,* 9 Or. 222, 225; *Loomis* v. *McFarlane,* 50 Or. 129, 134, 135 (91 Pac. 466); *Spande* v. *Western Life Co.,* 68 Or. 171, 188 (136 Pac. 1189); 8 R. C. L. 1051; 9 Cyc. 590.

None of the cases cited by the Chief Justice on the subject of construction involved the interpretation of a clause in a deed reserving to the grantor a dispensing power. The sole question involved in this case is the interpretation of such a clause. The restrictions themselves are clear and the parties are in substantial accord as to their meaning.

If it had been the intention of Laurelhurst Company to reserve to itself the power to dispense with all restrictions, it would have been easy to insert in the deeds a proviso to that effect. I apprehend that such

a proviso would have impaired the usefulness of the restrictions in marketing the property. The relative rights of appellants and Laurelhurst Company under the facts alleged in the complaint are clearly set out in *De Gray* v. *Monmouth Beach Co.,* 50 N. J. Eq. 329, 339 (24 Atl. 388, 391):

"The equity would seem to spring from the presumption that each purchaser has paid an enhanced price for his property, relying on the general plan, by which all the property is to be subjected to the restricted use, being carried out, and that while he is bound by and observes the covenant, it would be inequitable to allow any other owner of lands subject to the same restrictions to violate it.

"Lord Macnaghton, in *Spicer* v. *Martin,* 14 App. Cas. 12 (at p. 25), says: 'It seems to me that when Mr. Spicer put his houses in Cromwell Gardens on the market, he invited the public to come in and take a portion of an estate which was bound by one general law, a law perfectly well understood, and one calculated and intended to add to the security of the lessees, and consequently to increase the price of the houses. The benefit of that increase, whatever it was, Mr. Spicer got. Can he or his representative be permitted to destroy the value of the thing he sold, by authorizing the use of part of the estate, for a purpose inconsistent with the law by which he professed to bind the whole.' "

It is true that the construction adopted by me restricts within narrow limits the dispensing power reserved to itself by Laurelhurst Company; but I am led to this construction both by the import of the language used in the connection in which it is placed and also by the intention of the parties, to be gathered from the surrounding circumstances. The clause inserted in deeds executed by Laurelhurst Company was framed in 1909, when the tract was first put on the market. Its manifest purpose was to promote the

sale of lots by assuring to purchasers that the tract would be used only for high-class homes. Each purchaser accepted the restrictions when applied to his property, in the belief that he was abundantly recompensed by the assurance that the surrounding property would be devoted to the erection of homes whose cost should not be less than a stated sum, and whose number should not exceed one to a lot. If the dispensing power reserved had been a broad one, purchasers would not have found in the scheme the assurance with reference to neighboring property which was the incentive to purchase. The circumstances, suggest that the Laurelhurst Company must have intended that its purchasers should regard the restrictions as applying throughout the tract and the dispensing power as not materially interfering with the scheme. It is true, as contended by respondent, that the most fundamental canon of construction requires that effect be given to a contract in accordance with the intention of the parties, but Section 721 of Lord's Oregon Laws provides as follows:

"When the terms of an agreement have been intended in a different sense by the different parties to it, that sense is to prevail, against either party, in which he supposed the other understood it"

The material question is, therefore, what Laurelhurst Company intended its purchasers to understand by the language used: *Barr* v. *American Copying Co.,* 142 Ill. App. 92, 101, 102; *Maney Co.* v. *Baker Co.,* 186 Ill. App. 390, 394; *Stevens* v. *Amsinck,* 133 N. Y. Supp. 815, 821 (149 App. Div. 220); *People's Building Assn.* v. *Klauber,* 1 Neb. (Unof.) 676, 678, 679 (95 N. W. 1072); *Campbell* v. *Hobbs,* 97 Neb. 833, 836 (151 N. W. 929). I cannot think that it was intended by Laurelhurst Company that each purchaser was to

understand that the vendor of the tract had reserved to itself the right to permit the erection of a school or church building on the lot adjoining his purchase. It is alleged that appellants have improved their property and that the carrying out of respondent's plans will result in great and irreparable loss to appellants and will render their property undesirable and unsalable as homes.

In the event of the reversal of the decree, issue might be joined on these allegations and the proofs might not sustain them, but in the present condition of the record we are bound to accept these allegations as true. Where these results would follow we should be the more careful not to enlarge by construction the rights reserved by Laurelhurst Company to waive the restrictions under which its property has been marketed.

On the facts alleged in the complaint, in my opinion, appellants are entitled to an injunction restraining respondent from erecting on the property described in the complaint any building which does not conform to the restrictions above quoted. Respondent should be free to use the premises for church and school purposes in so far as such use is consistent with the building restrictions. A dwelling-house erected on the property could be used as a convent within the dispensing power reserved and exercised.

I think that the decree should be reversed.